1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    FULLVIEW, INC.,                          Case No. 18-cv-00510-EMC

8                        Plaintiff,           **ORDER GRANTING DEFENDANT'S
                                              PARTIAL MOTION TO DISMISS**
9            v.
                                              Docket No. 80
10   POLYCOM, INC.,

11                      Defendant.

12

13

14                    I.    **INTRODUCTION**

15          Plaintiff FullView, Inc. ("FullView") filed this lawsuit against Defendant Polycom, Inc.

16   ("Polycom") alleging patent infringement.  FullView is the owner of a patent disclosing

17   technology involving the creation of composite images—*i.e.*, a device capable of producing

18   panoramic photographs.  Pending before the Court is Polycom's partial motion to dismiss on the

19   grounds that all claims in FullView's patent are nonpatentable.  Polycom also argues that the

20   complaint fails to state a claim for global infringement under 35 U.S.C. section 271(g).  For the

21   reasons discussed below, the Court **GRANTS** Polycom's motion to dismiss because the claims are

22   directed at nonpatentable subject matter and seeks protection of an abstract idea without an

23   inventive concept.  Polycom's motion to dismiss FullView's Section 271(g) claim for failure to

24   plead sufficient facts is therefore moot.

25                    II.   **BACKGROUND**

26   A.    Factual Background

27          FullView's Second Amended Complaint alleges as follows.  Dr. Nishvjit Singh Nalwa

28   owns numerous patents and is the co-founder and current president of FullView.  Docket No. 75

United States District Court
Northern District of California

("SAC") ¶ 7.  FullView is the owner of U.S. Patent No. 6,700,711 ("'711 Patent"), which is entitled "Panoramic viewing system with a composite field of view . . . ."  *Id.* ¶ 10.  It is also the owner of U.S. Patent 6,128,143 ("'143 Patent") entitled "Panoramic viewing system with support stand . . . ."  *Id.* ¶ 10.  Polycom's motion only challenges the '711 Patent.

The '711 Patent is comprised of thirty-nine claims that covers "an omni-directional or panoramic viewer."  In other words, "[i]t describes several cameras looking out in different directions off mirrors, from offset rather than coincident viewpoints, to provide the user with seamless 360° composite images to the view's eye that allow the user to look in any direction . . . ."  *Id.* ¶ 12.  The '711 Patent is made up of the following claims:

- Claim 25 and its dependent claims—*e.g.*, 26. 28, 29, 33, 35, 37, and 39—are the "Composite Image Claims."

- Claim 1 and its dependent claims—*e.g.*, 2, 4, 5, 9, 11, 13, and 15—are the "Method Claims."

- Claim 16 and 18 are the "Apparatus Claims."[1]

SAC ¶ 34 ("FullView asserts only the following 18 claims here:  1, 2, 4, 5, 9, 11, 13, 15, 16, 18, 25, 26, 28, 29, 33, 35, 37 and 39.");  Mot. at 2.  The '143 Patent is made up of eighteen claims covering a "system and apparatus for a compact and non-instructive omni-directional or panoramic viewer in which several cameras look off a mirrored pyramid, this pyramid and these cameras secured to a support member that intersects an inner volume of the pyramid."  *Id.* ¶ 13.

On April 1, 2011, FullView licensed the '711 and '143 Patents to Polycom, which allowed Polycom to manufacture its CX5000 camera that provides for 360° video conferencing.  *Id.* ¶ 14.  On July 2, 2012, Polycom gave notice to FullView that it intended to terminate their agreement; however, Polycom terminated the agreement earlier than required under the agreement's 90-day-notice provision.  *Id.* ¶ 16.  Although Polycom ceased manufacturing its CX5000, FullView alleges that Polycom continued to sell the CX5000 without reporting these sales and, thus, foregoing payment of royalties owed to FullView.  *See id.* ¶¶ 20, 31.

---

[1] The Composite Image Claims, Method Claims, and Apparatus Claims are hereinafter collectively referred to as the "Asserted Claims."

B.      Procedural Background

      1.      History of Inter Partes Reexamination ("IPR")

      In January 2012,  Polycom filed an IPR petition challenging the validity of the '711 Patent. *Id*. ¶ 19.  On January 4, 2017, the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO") upheld each of the thirty-nine claims that make up the '711 Patent.  *Id*. ¶ 21.  The Court of Appeals for the Federal Circuit affirmed the PTAB's decision on April 29, 2019.  *Id*. ¶ 23.  The narrow subject of this litigation was obviousness.  *See Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970, 983 (Fed. Cir. 2019) ("After careful analysis of the parties' arguments and the Board's determination, we affirm the Board's finding that claims 1–21 and 25–39 of the '711 patent would not have been obvious . . . . We also find that Polycom waived its argument regarding anticipation for failing to raise it below.").

      On January 31, 2019, Polycom sought review of the '143 Patent.  *Id*. ¶ 24.  The PTAB denied the petition, as well as Polycom's request for rehearing on September 10, 2019.  *Id*. ¶ 25.

      2.      History of the Instant Litigation

      On January 23, 2018, FullView filed its initial complaint.  *See* Docket No. 1.  On March 7, 2018, this Court stayed this action pending the resolution of the IPR of the '711 Patent.  Docket No. 16.  Following the Federal Circuit's opinion upholding the PTAB's decision, FullView amended its complaint to include a fraudulent concealment allegation to toll the statute of limitations for an additional year of liability.  Docket No. 51 ("FAC").  Polycom moved to partially dismiss the fraud allegations for failure to satisfy Rule 9(b).  Docket No. 52.  Before the parties fully briefed Polycom's motion, FullView sought leave to file an amended pleading in order to enhance its factual allegations with respect to the fraudulent concealment theory, as well as include a false marketing claim.  Docket No. 68.  This Court partially denied FullView's request for leave to amend because the fraudulent concealment and false marketing claims were futile, thereby rendering Polycom's then-pending motion to dismiss moot.  Docket No. 72.  The Court, however, permitted FullView to file the remainder of its proposed SAC, which contained unopposed amendments.  *Id*.

      FullView filed its SAC on July 2, 2020, alleging one claim for relief:  infringement of the

United States District Court
Northern District of California

1  '711 and '143 Patents under 35 U.S.C. section 271 in the form of (1) direct infringement; (2)

2  infringement by inducement; and (3) infringement via the doctrine of equivalents.  SAC ¶¶ 59–66.

3  Polycom moved to dismiss the SAC.  *See* Mot.  The Court heard oral argument on August 20,

4  2020, wherein counsel for FullView discussed a Federal Circuit decision not cited in the parties'

5  briefs.  The Court permitted supplemental briefing on *Thales Visionix Inc. v. United States*, 850

6  F.3d 1343 (Fed. Cir. 2017).  *See* Docket No. 101.

7  ### III.   LEGAL STANDARD

8  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

9  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

10  complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

11  Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss

12  after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

13  *Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must

14  . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765

15  F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true

16  and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

17  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

18  complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

19  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

20  effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[2]  "A claim has facial

21  plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable

22  inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The

23  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

24  possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

25  "Patent eligibility can be determined at the Rule 12(b)(6) stage 'when there are no factual

26

27

28  ---
[2] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 813 (2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  Evaluation of a patent claim's subject matter eligibility under 35 U.S.C. section 101 can proceed even before a formal claim construction.  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016); *see also Aatrix*, 882 F.3d at 1125.

## IV.   DISCUSSION

In its motion to dismiss, Polycom contends the Composite Image Claims are invalid because they are not directed at patent-eligible subject matter delineated in 35 U.S.C. section 101 ("Section 101").  It also contends the Asserted Claims seek to patent abstract ideas without an inventive concept.  In response to Polycom's argument regarding failure to fit into statutory patent-eligible subject matter, FullView argues that Composite Image Claims fall under the "manufacture" category of Section 101.  FullView also takes the position that every claim within the '711 Patent contains an inventive concept and is not directed to an abstract idea.  *Id*. at 7.

A.    Patentable Subject Matter under 25 U.S.C. Section 101

Polycom argues that the Composite Image Claims (Claim 25 and dependent claims) are invalid under Section 101 because they fit in none of the statutory categories for patent eligibility.  Under Section 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor[.]"  35 U.S.C. § 101.  While FullView appears to argue that the Composite Image Claims are a "manufacture" under Section 101, much of FullView's opposition brief recounts the PTAB and Federal Circuit's decisions that pertained to whether the'711 Patent was novel and sustainable under Section 102—not whether it was directed at patent-eligible subject matter under Section 101.  Polycom correctly contends that novelty bears no relevance for Section 101 purposes.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of ***no relevance*** in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (emphasis in original) (quoting *Diamond v. Diehr*, 450 U.S.

5

1  175, 188–89 (1981)); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d

2  1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."); *accord*

3  *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 994 (N.D. Cal. 2019) (PTO's decision

4  regarding anticipation are "determinations [] not relevant to the Court's analysis of patent

5  eligibility.").  Thus, despite the Federal Circuit concluding that the technology in this litigation—

6  as a whole—is novel, that does not mean that the Composite Image Claims are directed at patent-

7  eligible subject matter under Section 101.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

8  1163 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747, *reh'g denied*, 140 S. Ct. 27 (2019) ("We may

9  assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is

10  not enough for eligibility.") (internal quotations omitted).

11        According to FullView, the only claim term within the Composite Image Claims that is

12  disputed by the parties is "image."  It contends the claimed term "image" is a "manufacture" under

13  Section 101.  In support of this argument, FullView cites to the *Merriam-Webster Dictionary*

14  because "image" invokes seven definitions, two of which read as follows:

> **Image**, noun
> **1**    **a**:  a visual representation of something:  such as
>         **(1)**:  a likeness of an object produced on a
>         photographic material
>         **(2)**:  a picture produced on an electronic display (such
>         as a television or computer screen)
>     **b**:  the optical counterpart of an object produced by an
>     optical device (such as a lens or mirror) or an electronic
>     device
> **2**    **a**:
>         **(1)**:  a mental picture or impression of something
>         **(2)**:  a mental conception held in common by
>         members of a group and symbolic of a basic attitude
>         and orientation
>     **b**:  IDEA, CONCEPT

23  https://www.merriam-webster.com/dictionary/image (emphasis in original).  According to

24  FullView, definition numbers 1a & 1b describe "image" as used in the Composite Image Claims.

25  Thus, FullView explains that the composite image—produced on a photographic material or on an

26  electronic display—is both tangible and a manufacture under Section 101.  In response, Polycom

27  contends that the fact that there seven dictionary definitions of "image" buttresses its position that

28  the Composite Image Claims are too broad and, thus, not a "manufacture" since these definitions

encompass intangible embodiments, such as transitory mental images and data.

Here, Claim 25 of the '711 Patent reads as follows:

> A composite image produce[d] with a plurality of sensors each having an individual field of view, by following the method of:
>
> > for at least one of the plurality of sensors, redirecting at least a portion of its individual field of view with a reflective area; and
> >
> > merging images corresponding to the individual fields of view to produce the composite image having a corresponding field of view, wherein each one of at least two fields of view corresponding to images that are merged has a portion, where the images are merged, that has viewing directions that are substantially similar to the viewing directions of the other portion, and wherein the viewing directions within each one of such two portions appear to originate substantially from a point that is offset from the point for the other one of such two portions.

SAC, Ex. A, cl 25.  The Composite Image Claims are broad enough to cover intangible images—

*i.e.*, it can include mental images or optical counterparts of an object produced by a lens, mirror, or

electronic device, like a reflection.

Two Federal Circuit decisions provide guidance on the definition of a "manufacture."  The

first, *In re Nuijten*, 500 F.3d 1346 (Fed. Cir. 2007), involved an appeal from the PTAB in which

the agency found the patent sought protection of subject matter outside the scope of Section 101.

The Court of Appeals held that the patent application for a signal with embedded digital

watermark encoded according to a given encoding process was not directed to statutory subject

matter.  *Id*. at 1357.  "If a claim covers material not found in any of the four statutory categories,

that claim falls outside the plainly expressed scope of § 101 even if the subject matter is otherwise

new and useful."  *Id*.  In analyzing whether the claimed signal constituted a "manufacture" in

*Nuijten*, the court held that the definition of a "manufacture" is a "tangible article[] or

commodity[y]."  *Id*.  The claimed signal was therefore not a manufacture—and thus not directed at

a statutorily patent-eligible subject matter—because "[a]ll signals within the scope of the claim do

not themselves comprise some tangible article or commodity."  *Id*. at 1356.  As noted above, the

Composite Image Claims are not confined to a tangible article or commodity.

Second, in *Mentor Graphics Corp. v. EVE-USA, Inc*., 851 F.3d 1275, 1294 (Fed. Cir.

United States District Court
Northern District of California

2017), the Federal Circuit held that the patent's claims regarding electromagnetic carrier waves were non-patentable subject matter under Section 101. The *Mentor* court held that the at-issue claims "present a scenario where there are multiple covered embodiments, and not all covered embodiments are patent-eligible." *Id.* at 1294. Relying on the non-binding Manual of Patent Examining Procedure ("MPEP"), the Court of Appeals concluded "that when a claim covers 'both statutory and non-statutory embodiments,' it is not eligible for patenting." *Id.* (quoting MPEP § 2106 (9th ed. Mar. 2014)). As noted above, that is the situation here.

FullView offers no persuasive response to *Nuijten* or *Mentor*. Instead, FullView takes the conclusory position that "in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent . . . the claimed 'image' is not a transitory signal—and neither does the '711 Patent describe or claim or embrace a transitory signal or wave as a potential storage medium for its claimed composite image." Docket No. 84 ("Opp.") at 13. But this fails to deal with *Nuijten* and *Mentor*. Moreover, it is inconsistent with FullView's own argument: FullView argues that the transmission of composite images in the form of intangible data into the United States via worldwide communication networks infringes under Section 271(g). Opp. at 19 ("the *purpose* of a video conferencing product is to allow user to communicate by transmitting images captured at one location to another location.") (emphasis in original). This makes the claims at issue comparable to *Mentor*.

Accordingly, the Court **GRANTS** Polycom's motion to dismiss the Composite Image Claims as patent ineligible under Section 101.

B.    Patentability under The Two-Step *Alice* Test

Moreover, all the Asserted Claims raise fundamental questions about patentability under Section 101. Polycom alleges all claims within the '711 Patent are directed at an abstract idea without offering an inventive concept under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). This Court agrees.

In *Alice*, the Supreme Court recognized that it has "long held that [Section 101] contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not

patentable." *Id*. at 216 (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  However, because all inventions will eventually touch upon laws of nature, natural phenomena, or abstract ideas, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id*. (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).  If the abstract concept incorporates a new and useful end, then it remains patent eligible. *Id*. (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).  Therefore, the *Alice* Court held that courts must (1) first determine whether the claims at issue are directed to an abstract idea; then (2) if the claims are directed to an abstract idea, determine whether the patent transforms that abstract idea into a patent-eligible invention.  *Id*. at 218, 221.

1. Step 1:  Whether the Patent is Directed to an Abstract Idea

Polycom argues the Asserted Claims are directed at an abstract idea because the concept of merging or redirecting multiple images to form a composite image is something "that humans have been creating in their visual cortex since the dawn of humanity" because "each eye sees a slightly different image (including blind spots) that the brain combines to form a composite image." Mot. at 1–2.  FullView's response, like its response to statutory-patent eligibility, relies exclusively on the Federal Circuit's decision on novelty:  "as clear from the Federal Circuit's treatment of the '711 invention . . . , both it and the PTAB clearly understood the claims to be directed to a specific means or method for improving technology and not simply directed to an abstract end-result."  Opp. at 7.  But as stated above, novelty is separate from eligibility.  *See, e.g.*, *Intellectual Ventures*, 838 F.3d at 1315; *Two-Way Media*, 874 F.3d at 1340; *SAP Am., Inc*, 898 F.3d at 1163.  The parties cite to two cases that are analogous and discuss the abstractness of technology similar FullView's:  (1) *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017); and (2) *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096 (N.D. Cal. 2019).

In *RecogniCorp*, the Federal Circuit decided whether a patent that was directed at building a composite facial image using encoding and decoding—*i.e.*, mathematics—passed the *Alice* test for patentability.  *RecogniCorp*, 855 F.3d at 1324.  Claim 1 of the patent read as follows:

1. A method for creating a composite image, comprising:

displaying facial feature images on a first area of a first display via a

9

first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;

selecting a facial feature image from the first area of the first display via a user interface associated with the first device, wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and

reproducing the composite image on a second display based on the composite facial image code.

*Id.* The district court, prior to claim construction, granted the defendant's motion for judgment on the pleadings under *Alice* because the claims were directed at the abstract idea of coding composite facial images without an inventive concept. *Id.* at 1325. The Federal Circuit affirmed. *Id.* at 1328. With respect to the patent vis-à-vis an abstract idea, the court held that "assign[ing] image codes to images through an interface using a mathematical formula, and then reproducing the image based on the codes . . . . [is] an abstract concept long utilized to transmit information." *Id.* According to the Court of Appeals, it was analogous to Morse code or ordering food at a restaurant via a numbering system. *Id.* The *RecogniCorp* court relied on a previous decision from the Federal Circuit that held a claim that "recites a process of taking two data sets and combining them into a single data set simply by organizing existing data into a new form" was an abstract concept. *Id.* at 1327 (citing *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)).

Similarly, in *Yanbin*, a district court concluded that the patent-in-suit similar to the disputed technology here failed the *Alice* test. There, Mr. Yu brought an action against Apple and Samsung alleging that both companies infringed his patent, which "claims an invention of a digital camera capable of producing high resolution images with better colors and details in a greater range . . . . The patent proposes an arrangement of multiple image sensors, lenses, and a processor to produce high quality and film-like true color digital images." *Id.* at 1101. The court concluded that the claim was directed at "the abstract idea of taking two pictures and using those pictures to enhance each other in some way." *Id.* at 1104. The court reached this conclusion because "[s]ince

United States District Court
Northern District of California

1    the earliest years of the photographic medium, those having skills in the art have used multiple

2    exposures, or the combining of multiple images, to enhance image . . . . Such a fundamental and

3    long prevalent practice is a quintessential abstract idea." *Id*. (internal quotations and alterations

4    omitted).

5         Here, the '711 Patent is directed to what the courts in *RecogniCorp* and *Yanbin* found to be

6    an abstract concept under *Alice*—the technology taught by the '711 Patent combines one picture

7    with another picture to form a larger picture, albeit a seamless one.  FullView's attempt to

8    distinguish *Yanbin* misses the point.  FullView argues that the district court refused to consider the

9    defendant's assertion that the claim was the same process as viewing images from a human's two

10   eyes.  This is true—the defendant in *Yanbin* did, in fact, make a broad challenge that the patent

11   should be invalidated because the "same idea can be found in the mental processes that produce

12   human vision from inputs from two eyes[.]"  *Yanbin*, 392 F. Supp. 3d at 1104.  However, the court

13   did not employ that broad test:  holding that "the Court need not go so far afield," it found the

14   patent was directed at an abstract concept because of historical photographic techniques of

15   "combining of multiple images, to enhance images."  *Id*.  So too here.

16        Polycom has demonstrated that the '711 Patent is aimed at an abstract concept.  It is

17   therefore non-patentable unless it involves an inventive concept.  As explained below, no

18   inventive concept exists to transform the abstract idea of creating composite images into

19   patentable subject matter.

20        2.     Step 2:  Whether the Patent Offers an Inventive Concept to the Abstract Idea

21        This Court then turns to the second step articulated by the Supreme Court.  FullView

22   reasserts the Federal Circuit's finding of non-obviousness in response to the second step in *Alice*

23   that requires an inventive concept.  The Federal Circuit found "counterintuitive" that the "nature

24   of using mirrors to make the viewpoints of multiple sensors coincide . . . only to turn around and

25   deliberately offset the viewpoints, such that the offset is perceptible to the viewer."  *Polycom*, 767

26   F. App'x at 982.  Although it could be argued this position is relevant here, the Federal Circuit has

27   held that the inventive concept must be "in the non-abstract application realm."  *SAP*, 898 F.3d

28   1168.  "If a claim's only 'inventive concept' is the application of an abstract idea using

11

conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). "[T]he relevant inquiry is not whether the claimed invention *as a whole* is unconventional or non-routine" but "whether *the claim limitations other than the invention's use of the ineligible concept to which it was directed* were well-understood, routine and conventional. *Id*. at 1290 (emphasis added).

FullView has not pointed to anything inventive in the '711 Patent that is separate and apart from the abstract idea of merging images. At the hearing, it became clear that the arrangement of cameras, sensors, and mirrors is the only concept that FullView purports to be inventive. But the putative invention here is simple geometry, a branch of mathematics—and math is not patentable. In *RecogniCorp*, the owner of the patent argued, unsuccessfully, that the mathematical formula associated with the coding and decoding of composite images was the inventive concept that transformed the otherwise abstract idea into a patent-eligible application. *See RecogniCorp*, 855 F.3d at 1328. The Federal Circuit rejected this argument. *Id*. ("Claims that are directed to a non-abstract idea are not rendered abstract simply because they use a mathematical formula. But the converse is also true: A claim directed to an abstract idea does not automatically become eligible merely by adding a mathematical formula.").

At the hearing, FullView relied on *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), in support of its argument that the arrangement of its sensors adds an inventive concept to the otherwise abstract idea of creating composite images—but that decision is distinguishable. In *Thales*, the Federal Circuit reversed the lower court's order that found a patent ineligible for protection under Section 101. *Id*. at 1349. The patent disclosed "an inertial tracking system for tracking the motion of an object relative to a moving reference frame." *Id*. at 1344. It contained inertial sensors that measured forces associated with changes in a sensor's position and orientation relative to a known starting position; when mounted on a moving object, these sensors calculate the position, orientation, and velocity of the object in three-dimensional space, based on a specified starting point, without the need for any other external information. *Id*. at 1344–45. The lower court granted the defendants' motion for judgment on the pleadings and found all claims

United States District Court
Northern District of California

directed to patent-ineligible subject matter under Section 101 because the claims (1) were directed to the abstract idea of using laws of nature governing motion to track two objects, and (2) provided no inventive concept beyond the abstract idea. *Id*. at 1446.

The Federal Circuit reversed on the grounds that the patent was not directed at an abstract idea, relying heavily on the Supreme Court's decision in *Diamond v. Diehr*, 450 U.S. 175, 177 (1981), which "confirmed the eligibility of patent claims despite the inclusion of a mathematical formula in a claimed method for molding raw, uncured rubber into cured rubber products." *Id*. at 1347. The Court of Appeals held the patent was not directed at an abstract idea, which thereby ended the *Alice* inquiry at Step 1. Specifically, the *Thales* court held that "[t]he claims specify a ***particular configuration*** of inertial sensors and a ***particular method*** of using the raw data from the sensors in order to more accurately calculate the position and orientation of an object on a moving platform. *Id*. at 1349 (emphasis added).

Polycom argues that the Methods Claims here lack the particularity present in the *Thales* patent's claims with respect to configuration or method. Here again, Claim 1 of the Methods Claims broadly states that '711 Patent claims:

> A method of producing a composite image with ***a plurality of sensors*** each having an individual field of view, comprising the steps of:
>
> > ***for at least one*** of the plurality sensors, redirecting at least a portion of its individual field of view with a reflective area; and
>
> merging images corresponding to the individual fields of view to produce the composite image having a corresponding field of view, wherein each one of at least two fields of view corresponding to images that are merged has a portion, where the images are merged, that has viewing directions that are substantially similar to the viewing directions of the other portion, and wherein the viewing directions within each one of such two portions appear to originate substantially from a point that is offset from the point for the other one of such two portions.

SAC, Ex. A, cl 1 (emphasis added). Polycom contends the claim does not offer any specifics as to what a plurality of sensors are or how many sensors are necessary. By contrast, in *Thales*, the patent specifically describes the arrangement with particularity:

> 1. A system for tracking the motion of an object relative to a moving

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

reference frame, comprising:

a first inertial sensor mounted on the tracked object;

a second inertial sensor mounted on the moving reference frame; and

an element adapted to receive signals from said first and second inertial sensors and configured to determine an orientation of the object relative to the moving reference frame based on the signals received from the first and second inertial sensors.

22. A method comprising determining an orientation of an object relative to a moving reference frame based on signals from two inertial sensors mounted respectively on the object and on the moving reference frame.

10    *Thales*, 850 F.3d at 1345–46.  But this Court need not identify the line regarding how specific or

11    particular an arrangement need be in order for it to transform an abstract idea into patentable

12    subject matter under *Thales*, because *Thales* never reached Step 2 under *Alice*.  It is therefore not

13    instructive to the Step 2 analysis herein.   Even if *Thales* were to inform the Step 2 analysis, it

14    would not change the conclusion that the basic teaching of the '711 Patent hinges on nothing more

15    than geometry.  The same cannot be said for the patent in *Thales.*

16         Lastly, the Apparatus Claims also do not disclose inventive technology.  Here, *Yanbin* is

17    once again instructive.  The district court found that "[o]nce the abstract idea is removed from the

18    claim, all that is left here is the 'conventional technology' of a digital camera, such as image

19    sensors, lenses, circuitry, memory and a processor being used in conventional ways."  *Id*. at 1106.

20    The patent-in-suit offered no inventive concept because "[t]here are no allegations that the

21    asserted combination and arrangement of well-understood, routine and conventional digital

22    camera components goes beyond the abstract idea of using multiple images to enhance one

23    image."  *Id*. (internal quotations and alterations omitted).  Here, after eliminating the abstract idea

24    of a composite image, the Apparatus Claims and Method Claims describe sensors, reflective areas,

25    mirrors, etc., that are well-known and generic.  *See In re TLI Commc'ns LLC Patent Litig.*, 823

26    F.3d 607, 613 (Fed. Cir. 2016) ("It is well-settled that mere recitation of concrete, tangible

27    components is insufficient to confer patent eligibility to an otherwise abstract idea.").

28         Accordingly, because there exists no inventive concept "in the non-abstract application

realm," *see SAP*, 898 F. 3d at 1168–69, the Court **GRANTS** Polycom's motion to dismiss because the '711 Patent is directed at the abstract idea of creating composite images with geometry, which is not an inventive concept as a matter of law.  This dismissal, however, is **without prejudice** to the extent FullView can amend its pleading in a way that is not inconsistent with this order.  *See Yanbin*, 392 F. Supp. 3d at 1108 ("In light of the plain language of the claims in the patent, the Court has substantial doubt that Yu can amend around this problem.  Even so, the Court cannot say that any amendment would necessarily be futile[.]").  Since this Court concludes that the '711 Patent is invalid, Polycom's request for dismissal of the SAC's Section 271(g) claim is moot.

## V.    <u>CONCLUSION</u>

In sum, the Court rules as follows:

- Polycom's motion to dismiss is **GRANTED without prejudice**  because the Composite Image Claims contained in the '711 Patent are not a "manufacture" since it seeks to patent intangible embodiments, and the Composite Image Claims do not fit into any other patent-eligible category under Section 101;

- Polycom's motion to dismiss is **GRANTED without prejudice** because the '711 Patent is directed at the abstract idea of combining multiple pictures to create one larger picture, and there exists no inventive concept; and

- Polycom's motion to dismiss the SAC's Section 271(g) claim for failure to plead sufficient facts regarding importing patented processes into the United States is moot.

This order disposes of Docket No. 80.


**IT IS SO ORDERED**.


Dated: September 10, 2020

_____
EDWARD M. CHEN
United States District Judge

15