UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULLVIEW, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>POLYCOM, INC.,<br><br>    Defendant. | Case No. 18-cv-00510-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT, AND DENYING DEFENDANT'S MOTION TO SEVER**<br><br>Docket Nos. 123, 129 |

## I. INTRODUCTION

Plaintiff FullView, Inc. ("FullView") filed this lawsuit against Defendant Polycom, Inc. ("Polycom") alleging patent infringement. FullView is the owner of a group of patents disclosing technology involving the creation of composite images—*i.e.*, a device capable of producing panoramic photographs. Pending before the Court are (1) FullView's motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15, *see* Docket No. 123 ("Amend Mot."); and (2) Polycom's cross-motion to sever the case pursuant to Federal Rule of Civil Procedure 21 and to stay the action, *see* Docket No. 129 ("Sever Mot.").

For the following reasons, Court **DENIES** both motions.

## II. BACKGROUND

A. Factual Background

FullView's second amended complaint (SAC) alleges as follows. Dr. Nishvjit Singh Nalwa owns numerous patents and is the co-founder and current president of FullView. Docket No. 75 ("SAC") ¶ 7. FullView is the owner of U.S. Patent No. 6,700,711 ("'711 Patent"), which is entitled "Panoramic viewing system with a composite field of view." *Id.* ¶ 10. It is also the

owner of U.S. Patent 6,128,143 ("'143 Patent"), which is entitled "Panoramic viewing system with support stand." *Id.* ¶ 10.

The '711 Patent is comprised of thirty-nine claims that cover "an omni-directional or panoramic viewer." In other words, "[i]t describes several cameras looking out in different directions off mirrors, from offset rather than coincident viewpoints, to provide the user with seamless 360° composite images to the view's eye that allow the user to look in any direction." *Id.* ¶ 12.

The '711 Patent is made up of the following claims:

- Claim 25 and its dependent claims—*e.g.*, 26. 28, 29, 33, 35, 37, and 39—are the "Composite Image Claims."
- Claim 1 and its dependent claims—*e.g.*, 2, 4, 5, 9, 11, 13, and 15—are the "Method Claims."
- Claim 16 and 18 are the "Apparatus Claims."

*Id.* ¶ 34 ("FullView asserts only the following 18 claims here: 1, 2, 4, 5, 9, 11, 13, 15, 16, 18, 25, 26, 28, 29, 33, 35, 37 and 39.").

The '143 Patent is made up of eighteen claims covering a "system and apparatus for a compact and non-instructive omni-directional or panoramic viewer in which several cameras look off a mirrored pyramid, this pyramid and these cameras secured to a support member that intersects an inner volume of the pyramid." *Id.* ¶ 13.

FullView owns two other patents that it never asserted against Polycom until now: U.S. Patent No. 6,356,397 (the "'397 Patent"), which is entitled "Panoramic viewing system with shades," Docket No. 123-1 (Third Am. Compl. ("Proposed TAC")), Ex. J ("'397 Patent"); and U.S. Patent No. 6,219,090 (the "'090 Patent"), which is entitled "Panoramic viewing system with offset virtual optical centers," *id.*, Ex. K ("'090 Patent"). These patents are "from the same family as the '711 Patent: All three patents are continuations of [Mr. Nalwa's] application of October 7, 1997, have identical figures, and very similar specifications." Amend Mot. at 2. In fact, the '397 and '090 Patents—like the '711 Patent—also expired on November 30, 2015.

On April 1, 2011, FullView licensed its four patents—the '711, '143, '397, and '090

2

Patents— to Polycom, which allowed Polycom to manufacture its CX5000 camera that provides for 360° video conferencing. Proposed TAC ¶ 14. On July 2, 2012, Polycom gave notice to FullView that it intended to terminate their agreement; however, Polycom terminated the agreement earlier than required under the agreement's ninety-day-notice provision. SAC ¶ 16. Although Polycom ceased manufacturing its CX5000, FullView alleges that Polycom continued to sell the CX5000, which FullView contends practices the subject patents without reporting these sales, thus foregoing payment of royalties owed to FullView. *See id.* ¶¶ 20, 31.

B. Procedural Background

1. *Inter Partes* Review History

In January 2012, Polycom filed an *Inter Partes* Reexamination ("IPR") challenging the validity of the '711 Patent based on obviousness grounds. *See* SAC ¶ 18; *see also Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970, 983 (Fed. Cir. 2019). On January 4, 2017, the Patent Trial and Appeal Board ("PTAB") upheld the '711 Patent as valid, and the Federal Circuit affirmed the PTAB's decision on April 29, 2019. SAC ¶¶ 21, 23.

On January 31, 2019, Polycom sought an IPR of the '143 Patent. *Id.* ¶ 24. The PTAB denied this petition as well as Polycom's request for rehearing on September 10, 2019. *Id.* ¶ 25.

2. Litigation History

On January 23, 2018, FullView filed its initial complaint. Docket No. 1. On March 7, 2018, this Court stayed this action pending the resolution of the '711 Patent's IPR. Docket No. 16. After the Federal Circuit affirmed the PTAB's decision, FullView amended its complaint to also include fraud allegations. Docket No. 48 (FAC). Polycom moved to dismiss the fraud allegations for failure to satisfy Rule 9(b). Docket No. 51. Before the parties could fully brief Polycom's motion, FullView sought leave to amend its complaint to enhance the fraud allegations and assert an additional false marketing claim. Docket No. 65. This Court partially denied FullView's request for leave to amend because both the fraud allegations and false marketing claims were futile. Docket No. 72. This denial also rendered Polycom's motion to dismiss moot. *Id.* However, the Court allowed FullView to file the remainder of its second amended complaint, as these amendments were unopposed. *Id.*

3

On July 2, 2020, FullView filed its SAC alleging a single claim for relief: infringement of both the '711 and '143 Patents under 35 U.S.C. § 271 by (1) direct infringement; (2) infringement by inducement; and (3) infringement via the doctrine of equivalents. SAC ¶¶ 59-66. Polycom moved to partially dismiss the '711 Patent from the SAC because it was directed at nonpatentable subject matter and sought to protect an abstract idea without an inventive concept in contravention of 35 U.S.C. § 101. *See* Docket No. 80. The Court agreed and granted Polycom's partial motion to dismiss on both grounds. *See* Docket No. 105 ("Partial MTD Order").

At this stage in the litigation, the '143 Patent is the sole patent at issue and only claims 10 through 12 are in dispute. *See* SAC ¶ 47. On April 5, 2021, the Court issued an order construing the disputed terms of the '143 Patent.

On March 5, 2021, FullView moved to file a third amended complaint (TAC) seeking to add the '397 and '090 Patents (collectively, "the Additional Patents") to this action. *See* Amend Mot.

On March 19, 2021, along with its opposition to FullView's motion for leave to amend, Polycom filed a cross-motion to sever the case so that the Court can proceed separately with FullView's allegations pertaining to the '143 Patent separately from those pertaining to the '711 Patent. *See* Sever Mot. at 1. The cross-motion also asks the Court to stay the case as to the '143 Patent while the Federal Circuit reviews this Court's dismissal of the SAC's allegations pertaining to the '711 Patent. *Id.*

### III. MOTION FOR LEAVE TO AMEND

A. Legal Standard

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. Fed. R. Civ. P. 15(a). Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires." *Id.* However, "the grant or denial of a subsequent opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether leave should be granted pursuant to a district court's discretion, the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason—such as undue

4

> delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id*.

In the Ninth Circuit, the above listed factors—referred to as the *Foman* factors—are not weighted equally. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) ("Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). Rather, courts have held that "the crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). A motion may be denied, however, on grounds of futility of the proposed amendments irrespective of prejudice. *See generally Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018); *see also Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).

Because the instant case is a patent infringement action, Patent Local Rule 3–6 applies. *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 507 (N.D. Cal. 2011). FullView has long served its infringement contentions on Polycom. *See* Sever Mot. at 3. Thus, Fullview would have to amend those infringement contentions to add the Additional Patents if this Court grants it leave to add those patents to the complaint. Accordingly, the Court must consider both Rule 15 as well as Patent Local Rule 3–6 in determining whether to grant or deny FullView's motion for leave to amend.

There is some overlap in the analysis under both rules. For example, under Rule 15, undue delay by the party seeking leave to amend is a factor that a court may consider. *See Bowles v. Reade,* 198 F.3d 752, 757–58 (9th Cir. 1999). Similarly, amendment of infringement contentions under the local rule "may be made only by order of the Court *upon a timely showing of good cause*," Pat. Loc. R. 3–6 (emphasis added), which can be established only where the party seeking leave to amend shows diligence. *See Oracle Am., Inc. v. Google Inc.*, No. C 10–03561 WHA, 2011 WL 3443835, at *1 (N.D. Cal. Aug. 8, 2011) ("For purposes of Rule 3–6, '"good cause"

1  requires a showing of diligence,' and '[t]he burden is on the movant to establish diligence rather
2  than on the opposing party to establish a lack of diligence.'" (quoting *O2 Micro Int'l Ltd. v.*
3  *Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed. Cir. 2006))).

There are, however, differences between Rule 15 and Patent Local Rule 3–6. Most notably, under Rule 15, undue delay by itself "is insufficient to justify denying a motion to amend." *Bowles*, 198 F.3d at 758. There must also be either (1) prejudice to the opposing party, (2) bad faith by the moving party, or (3) futility of the amendment. *See id.* ("We have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment."). In contrast, under Patent Local Rule 3–6, if there is no diligence, the amendment may be denied without a showing of prejudice. *See Acer, Inc. v. Tech. Props.*, Nos. 5:08–cv–00877 JF/HRL, 5:08–cv–00882 JF/HRL, 5:08–cv–05398 JF/HRL, 2010 WL 3618687, at *5 (N.D.Cal. Sept. 10, 2010) ("Because TPL has not demonstrated diligence, 'the inquiry should end.'" (quoting *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)); *Oracle*, 2011 WL 3443835, at *1. The Federal Circuit in *O2 Micro International* has approved such application of the local rule. *See* 467 F.3d at 1366.

B. <u>The Additional Patents</u>

The TAC seeks to assert claim 7 (which incorporates claim 1) of the '397 Patent (the "Additional Apparatus Claim"), *see* Proposed TAC ¶¶ 48–49, which is substantially similar to claim 16 of the '711 Patent (the "Dismissed Apparatus Claim"):

///
///
///
///
///
///
///
///

6

| **Dismissed Apparatus Claim** (Claim 16 of the '711 Patent) | **Additional Apparatus Claim** (Claim 7 of the '397 Patent) |
|---|---|
| 16. A viewing apparatus having a composite field of view, comprising:<br><br>at least two image sensors, each having an individual field of view;<br><br>at least one reflective area that redirects at least part of the individual field of view associated with one of the image sensors,<br><br>the individual fields of view of at least two image sensors being merged to produce the composite field of view, at least portions of each of the two individual merged fields of view having substantially similar viewing directions where they are merged, and **the merged fields of view creating in the composite field of view at least one blind region that encompasses at least a portion of an edge of the reflective area and that lies between portions of two individual fields of view**; and<br><br>a memory for storing data representative of said composite field of view electronically.<br><br>'711 Patent at col. 11 ll. 39–57. | 1. A viewing apparatus having a composite field of view, comprising:<br><br>at least two image transducers, each having an individual field of view;<br><br>a reflective element having at least one reflective area that is positioned to redirect at least part of the field of view associated with a first one of the image transducers;<br><br>at least part of the redirected field of view being merged with at least part of the field of view associated with the second one of the image transducers to produce the composite field of view of the viewing apparatus, these parts of the fields of view associated with the first and second image transducers *being arranged* with respect to the reflective area to *create a blind region that is not in either of these two parts of the fields of view,* that encompasses a portion of an edge of the reflective area, and that is located between the parts of the two fields of view associated with the first and second image transducers that produce the composite field of view.<br><br>7. The viewing apparatus of claim 1, wherein the image transducers are image capture devices.<br><br>'397 Patent at col. 9 ll. 13–32, col. 10 ll. 22–23. |

The different wording in the Additional Apparatus Claim (emphasized in *italics* above) merely adds the words "being arranged" to the corresponding phrase in the Dismissed Apparatus Claim (emphasized in **bold** above), which recites "the merged fields of view creating . . . at least one blind region." *Compare* '711 Patent at col. 11 ll. 51–55, *with*, '397 Patent at col. 9 ll. 26–28.

The TAC also seeks to assert claims 3 (which incorporates claim 1) and 5 (which incorporates claims 1 and 4) of the '090 Patent (the "Additional Method Claims"), *see* TAC ¶¶

7

52–53, which are substantially similar to claim 2 (which incorporates claim 1) of the '711 Patent (the "Dismissed Method Claim"):

| **Dismissed Method Claim** (Claim 2 of the '711 Patent) | **Additional Method Claims** (Claims 3 and 5 of the '090 Patent) |
|---|---|
| 1. A method of producing a composite image with a plurality of sensors each having an individual field of view, comprising the steps of: <br><br> for at least one of the plurality of sensors, redirecting at least a portion of its individual field of view with a reflective area; and <br><br> merging images corresponding to the individual fields of view to produce the composite image having a corresponding field of view, wherein each one of at least two fields of view corresponding to images that are merged has a portion, where the images are merged, that has viewing directions that are substantially similar to the viewing directions of the other portion, and wherein the viewing directions within each one of such two portions appear to originate substantially from a point that is offset from the point for the other one of such two portions. <br><br> 2. The method of claim 1, wherein the field of view corresponding to the composite image has at least one **blind region** that encompasses at least a portion of an edge of a reflective area and that lies between the two portions of the two individual fields of view. <br><br> '711 Patent at col. 10 ll. 43–64. | 1. A method of producing a composite image, comprising the steps of: <br><br> *disregarding a portion* of a first sensor's field of view to produce a first sensor modified field of view having a first modified field of view boundary, at least a portion of the first sensor modified field of view being redirected by a first reflective surface; <br><br> *disregarding a portion* of a second sensor's field of view to produce a second sensor modified field of view having a second modified field of view boundary; and <br><br> merging a first image obtained from the first modified field of view with a second image obtained from the second modified field of view. <br><br> 3. The method of claim 1, wherein the *disregarded portion* of the first sensor's field of view contains at least a portion of an edge of the first reflective surface. <br><br> 4. The method of claim 1, wherein at least a portion of the second sensor modified field of view is redirected by a second reflective surface. <br><br> 5. The method of claim 4, wherein the *disregarded portion* of the second sensor's field of view contains at least a portion of an edge of the second reflective surface. <br><br> '090 Patent at col. 9 l. 18–col. 10 l. 21. |

The different wording in the Additional Method Claims simply replaces the words "blind region" in the '711 Patent (emphasized in **bold** above) with the words "disregarded portion" (emphasized

8

in *italics* above). *Compare* '711 Patent at col. 10 ll. 43–64, *with*, '090 Patent at col. 9 l. 18–col. 10 l. 21.

C. <u>Analysis</u>

For the reasons discussed below, the Court denies FullView's motion to amend the complaint. First, FullView failed to exercise diligence in timely asserting the Additional Patents and is thus barred by Patent Local Rule 3–6. Second, under Rule 15, its delay under Rule 15 was undue and made in bad faith. Finally, the proposed amendment would be futile because the Additional Patents are subject to the same basis of invalidity under § 101 as this Court found with respect to the '711 Patent.

1. <u>Lack of Diligence Under Patent Local Rule 3–6</u>

FullView failed to assert the Additional Patents after almost three years of litigation. The Additional Patents issued on April 12, 2001 ('090 Patent) and March 12, 2002 ('397 Patent), and—along with the '711 and '143 Patents—were part of the April 1, 2011 licensing agreement that forms the entire basis of FullView's claims against Polycom. Proposed TAC ¶ 18. FullView in fact admits that it knew about the Additional Patents and any claims it had pertaining to those patents at the same time it knew of any claims it had pertaining to the '711 and '143 Patents, but *chose* to assert only the latter. *See* Reply at 4 ("[FullView] *chose* to sue on the '711 Patent, believing the '397 and '090 Patents to be *duplicative*." (emphases added)). In other words, FullView "does little to explain how it acted with diligence." *Trans Video Elecs*, 278 F.R.D. at 509. This is especially troubling given that FullView has filed three complaints in this case without those patents in the span of three years, even though it knew about them and could have easily included them in its initial complaint in 2018. *Id.* (finding lack of diligence because Trans Video "does nothing to explain why [it] did not assert claim 4 either at the outset of the case or why it waited four months after the claim construction order to move to amend").

The Court denies leave to amend FullView's infringement contentions because FullView was not diligent in asserting the '090 and '397 Patents earlier and thus failed to establish good cause for the belated proposed amendment. This warrants denial under Local Rule 3-6 irrespective of prejudice to Polycom. *Trans Video Elecs.*, 278 F.R.D. at 509 ("[P]rejudice is not a

9

1    requirement under Patent Local Rule 3–6.  Trans Video's failure to demonstrate diligence alone
2    bars relief under Rule 3–6.").

### 2. Undue Delay and Bad Faith Under Rule 15

The Court also denies FullView leave to amend the complaint under Rule 15 because FullView's failure to timely assert the Additional Patents constitutes undue delay and its motion for leave to amend was filed in bad faith.  *See Bowles,* 198 F.3d at 758 ("We have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, *bad faith* by the moving party, or futility of the amendment." (emphasis added)); *Trans Video Elecs.*, 278 F.R.D. at 509–10 ("[P]rejudice is not an absolute requirement under Rule 15 . . . undue delay *combined with bad faith* is enough to justify a denial of a motion to amend." (emphasis added)); *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013) ("[U]ndue delay by itself is not enough to deny an amendment to a pleading; there must also be, *e.g.*, prejudice, *bad faith*, or futility."(emphasis added)).

As explained in the previous section, FullView's failure to assert the Additional Patents constituted undue delay.  Its request to add the Additional Patents after the Court dismissed the nearly identical '711 Patent strongly suggests bad faith.  FullView admits that it was prompted to seek leave to add the Additional Patents because this Court dismissed the '711 Patent from this action on September 10, 2020.  Amend Mot. at 5.  FullView also admits that it "*chose* to sue on *that* patent, believing that the '397 and '090 Patents to be *duplicative*."  Reply at 4 (emphases added).  FullView thus sought to hedge its bet.  FullView's motion for leave to amend is tantamount to an effort to undo the Court's determination that the claims in the '711 Patent are not unenforceable under § 101 without properly filing a motion for reconsideration.  The strategic withholding of the Additional Patents constitutes a deliberate effort at piecemeal litigation which wastes the Court's and the parties' time and resources.  *Cf. Trans Video*, 278 F.R.D. at 510 ("[T]he Court agrees with Sony that the motion to amend was taken in bad faith, more specifically, as a last-ditch attempt to avoid the case being dismissed in its entirety.").

3. Futility

The '090 and '397 Patent claims are materially indistinguishable from the '711 Patent claims for purposes of § 101 analysis under *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 217–18 (2014). In *Alice*, the Supreme Court recognized that it has "long held that [§ 101] contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Id.* at 216 (citing *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). As this Court previously noted under *Alice*, courts must (1) first determine whether the claims at issue are directed to an abstract idea; then (2) if the claims are directed to an abstract idea, determine whether the patent transforms that abstract idea into a patent-eligible invention. *Id.* at 218, 221. For the same reasons this Court found the '711 Patent invalid, the '090 and '397 likewise fail both steps of *Alice*.

a. Alice Step One

In its order granting Polycom's partial motion to dismiss, this Court held that the asserted claims of the '711 Patent were "directed to . . . an abstract concept under *Alice*—the technology taught by the '711 Patent combines one picture with another to form a larger picture, albeit a seamless one." Partial MTD Order at 11. FullView admits that the Additional Patents are "from the same family," "have identical figures and very similar specifications," Amend Mot. at 2, and "cover the same invention as the '711 Patent," *id.* at 6. "The parties [also] agree that the new claims that FullView seeks to assert from these two patents cover the invention of the '711 Patent." Docket No. 136 ("Reply") at 1. FullView even admits that "[t]he infringement contentions served in this case will be identical to those already provided in connection with the '711 Patent." *Id.* at 4. In short, the claims of the Additional Patents are also directed at the same non-patentable abstract idea of merging images to create a seamless composite image. Therefore, the Additional Patents are also directed to an abstract idea under step one of *Alice*.

FullView first attempts to argue that the Additional Patents are not directed to an abstract idea because they "created multiple advantages over prior art systems." Amend Mot. at 12. But this Court already explained in its order dismissing the '711 Patent that "novelty is separate from eligibility." Partial MTD Order at 9. The Additional Patents might teach "groundbreaking,

11

1 innovative, or even brilliant" techniques, "but that is not enough for eligibility" if the claims are

2 directed at patent-ineligible abstract subject matter under § 101. *SAP Am., Inc. v. InvestPic LLC*,

3 898 F.3d 1161, 1163 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747, *reh'g denied*, 140 S. Ct. 27

4 (2019).

What matters in the *Alice* step one analysis is "whether the claims in these patents focus on a *specific means or method* that improves the relevant technology or are instead directed to a *result or effect* that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (emphases added)); *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 241, 208 L. Ed. 2d 19 (2020) (finding that the claims describe an abstract idea because they "are not limited to a specific implementation of a technological improvement to communication systems" and "simply recite a system that wirelessly communicates status information"). In *McRO*, for example, the Federal Circuit concluded that the claims at issue were not directed at an abstract idea because they "incorporate[ed] the *specific features of the [computer software's] rules as claim limitations* [. . . and were thus] limited to a specific process for automatically animating characters using *particular* information and techniques and [did] not preempt approaches that use rules of a different structure or different techniques." 837 F.3d at 1316 (emphases added). In other words, the claims at issue in *McRO* were not themselves the abstract idea of automatic and synchronized animation because they "use[d] the limited [software] rules in a process *specifically* designed to achieve an improved technological result in a conventional industry practice." *Id.* (emphasis added); *see also Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (patent not directed at an abstract idea because "[t]he claims specify a *particular configuration* of inertial sensors and a *particular method* of using the raw data from the sensors in order to more accurately calculate the position and orientation of an object on a moving platform" (emphases added)).

Here, by contrast, the Additional Apparatus and Method Claims merely describe an abstract result—merged composite images—using generic processes—*i.e.*, disregarding, redirecting, and merging portions of a field of view—and machinery—*i.e.*, sensors, reflective

12

surfaces, and image transducers. *Cf. Chamberlain*, 935 F.3d at 1346–48 (claims merely described an abstract result—"wirelessly communicating status information"—using "off the shelf" processes and machinery—*i.e.*, a "controller, interface, and wireless data transmitter"). The Additional Apparatus and Method Claims do not specify *how* to achieve the objective of the alleged invention; they are not "limited to a *specific* implementation of a technological improvement," *Chamberlain*, 935 F.3d at 11347 (emphasis added), or a "*specific means or method*" of creating a seamless composite image, *McRO*, 837 F.3d at 1314 (emphasis added), and are thus directed at an abstract idea.

FullView also argues that the Additional Patents are not directed to an abstract idea because their "specification . . . describes how to implement its 'blind regions' with existing hardware." Amend Mot. at 17. This argument fails because it is well-settled law that courts are to focus only on the claims when conducting a § 101 analysis. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328–29 (Fed. Cir. 2020) ("[A]ny reliance on the specification in the § 101 analysis must always yield to the claim language." (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019))). Therefore, the Court cannot rely on any specific embodiments or descriptions in the specification to conclude that the Additional Patents are directed to patentable non-abstract subject matter—the specific way of implementing the invention must be in the claims.

Accordingly, the Court concludes that the Additional Patents, like the '711 Patent, are directed at an abstract idea under *Alice* step one.

          b.      <u>Alice Step Two</u>

The claims of the Additional Patents are not saved from § 101 invalidity under *Alice* Step Two. "The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine whether they identify an 'inventive concept' in the application of the ineligible subject matter to which the claim is directed." *Chamberlain*, 935 F.3d at 1348 (quoting *Affinity Labs of Tex. v. Amazon.com Inc.*, 838 F.3d 1266, 1258 (Fed. Cir. 2016)). "'Simply appending conventional steps, specified at a high level of generality,' [i]s not 'enough' to supply an 'inventive concept.'" *Alice*, 573 U.S. at 222 (quoting *Mayo Collaborative Servs. v.*

13

*Prometheus Labs, Inc.*, 566 U.S. 66, 82 (2012)).

There is nothing inventive in the claims of the Additional Patents that is separate and apart from the abstract idea of merging images. As with the claims of the '711 Patent, "the putative invention here is simple geometry, a branch of mathematics—and math is not patentable." Partial MTD Order at 12. The Additional Apparatus Claim merely adds the words "being arranged" to the corresponding phrase in the Dismissed Apparatus Claim, which recites "the merged fields of view creating . . . at least one blind region." *Compare* '711 Patent at col. 11 ll. 51–55, *with*, '397 Patent at col. 9 ll. 26–28. This "being arranged" language is also abstract because it "do[es] no more than describe[] a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution." *Affinity Labs of Tex.*, 838 F.3d at 1267. The addition of the term "being arranged" to the Additional Apparatus Claim does not render the '397 Patent inventive because "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.*; *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("The claims . . . do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology. The claims therefore do not state an arguably inventive concept in the realm of application of the information-based abstract ideas."). Like the Dismissed Apparatus Claim in the '711 Patent, the Additional Apparatus Claim fails to offer any inventive concept to the abstract idea of merging several images to create a composite image that would transform that abstract idea into a patentable invention.

Similarly, the Additional Method Claims are substantially similar to the Dismissed Method Claim. As explained above, the Additional Method Claims simply replace the words "blind region" in the Dismissed Method Claim of the '711 Patent with the words "disregarded portion." *Compare* '711 Patent at col. 10 ll. 43–64, *with*, '090 Patent at col. 9 l. 18–col. 10 l. 21. Like the addition of the words "being arranged" to the Additional Apparatus Claim, the additional language in the Additional Method Claim merely describes "a desired function or outcome," *Affinity Labs of Tex.,* 838 F.3d at 1267, without specifying how to achieve the desired outcome: "disregarding a

14

portion of a [first/second] sensor's field of view to produce a [first/second] sensor modified field of view having a [first/second] modified field of view boundary," '090 Patent at col. 9 l. 18–col. 10 l. 21. Like the Dismissed Method Claim, the functional nature of the Additional Method Claims is not transformative and inventive. *See Affinity Labs of Tex.*, 838 F.3d at 1269; *Elec. Power Grp.*, 830 F.3d at 1356.

FullView asserts the Additional Patents identify the inventive aspect of the patents as the merging of images corresponding to each of the fields of view redirected off of reflective surfaces to form a composite image. *Compare* '711 Patent at Col. 2 ll. 52–63, *with* '397 Patent at col. 1 l. 57–col. 2 l. 1, *and* '090 Patent at col. 1 l. 63–col. 2 l. 4. However, as this Court already held, that "the arrangement of cameras, sensors, and mirrors . . . is simple geometry, a branch of mathematics—and math is not patentable." *See* Partial MTD Order at 12. As the Court noted, "after eliminating the abstract idea of a composite image, the [Additional Apparatus and Method Claims] describe sensors, reflective areas, mirrors, etc., that are well-known and generic." *Id.* at 14 (citing *In re Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.")). FullView argues that the Additional Patents differ because the arrangement of cameras, sensors, and mirrors therein concern "topology," not geometry. Amend Mot. at 20. This is a distinction without a difference because topology, like geometry, is a branch of mathematics. *See Topology*, Merriam-Webster, https://www.merriam-webster.com/dictionary/topology (last visited Apr. 7, 2021) (defining "topology" as "*a branch of mathematics* concerned with those properties *of geometric configurations* (such as point sets) which are unaltered by elastic deformations (such as a stretching or a twisting) that are homeomorphisms." (emphases added)). Thus, whether rooted in topology or geometry, the invention described in the '711 Patent and the Additional Patents lacks an inventive concept "in the non-abstract application realm." *SAP Am.*, 898 F.3d at 1168–69.

FullView finally argues that the claims of the Additional Patents offer a "solution to a specific longstanding practical problem that others could not solve." Amend Mot. at 18–19. The problem with this argument is that the relevant inquiry for purposes of *Alice* step two is not that

15

the patent solves a specific problem, but that it offers a specific innovative solution. To establish that the Amended Patents offer such a solution, FullView cannot simply state, in general terms, that the claimed invention is "non-conventional," "counter-intuitive," or "inventive." *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[T]he relevant inquiry is not whether the claimed invention *as a whole* is unconventional or non-routine" but "whether *the claim limitations other than the invention's use of the ineligible concept to which it was directed* were well-understood, routine and conventional." (emphases added)). Therefore, like the '711 Patent, the Additional Patents do not offer an inventive solution because FullView is unable to point to anything inventive in the claims of the Additional Patents that is separate and apart from the abstract idea of merging images. *See* Partial MTD Order at 12.

Accordingly, the Court also concludes that the claims of the Additional Patents, like the claims of the '711 Patent, are not eligible for patent protection under § 101 and thus the proposed amendments to add those patents to this action are futile.

## IV. <u>MOTION TO SEVER</u>

### A. <u>Legal Standard</u>

Under Rule 21, a court has discretion to "sever any claim against a party." Fed. R. Civ. P. 21; *see also Rush v. Sport Chalet*, 779 F.3d 973, 974 (9th Cir. 2015) ("We review the district court's decision to sever. . . under Rule 21 for abuse of discretion."). This rule allows a court "to structure a case for the efficient administration of justice." 4–21 Moore's Fed. Prac. Civ. § 21.02[1].

### B. <u>Discussion</u>

Polycom asks this Court to sever this action into two separate actions: one pertaining to the infringement allegations of the '143 Patent and another pertaining to infringement allegations of the '711 Patent. Sever Mot. at 24–25. FullView has admitted that '711 Patent is "of greater importance to the overall case than" the '143 Patent, *see* Docket No. 128 ("*Markman* Tutorial Hr'g Tr.") at 29:16; that the issues between these '711 and '143 patents are "entirely separable," *id.* at 30:5–6; and, most importantly, that it has "concluded that the Federal Circuit will not take . . . [a] piecemeal appeal" of this Court's order dismissing the '711 Patent. Therefore, according to

16

Polycom, severing the allegations pertaining to the '711 Patent would facilitate the parties' settlement discussions because it would allow FullView to appeal this Court's order dismissing the '711 Patent, which could motivate Fullview to settle if the order is affirmed by the Federal Circuit. Polycom asks the Court to stay the proceedings while the appeal is pending so that discovery can proceed concurrently on all the patents in case the Federal Circuit reverses.

FullView opposes Polycom's sever because "the delay that granting such a 'Cross Motion' would cause—because of the ensuing piecemeal appeals to the Federal Circuit—would exceed any delay from granting FullView's motion [for leave to amend]." *Id.* FullView evidently is not interested in separately appealing the Court's dismissal of the '711 Patent.

Polycom's motion to sever is denied because it is not necessary to efficiently resolve the issues in this case, especially because FullView has manifested it is not interested in a piecemeal appeal if it means severing the claims. Moreover, if this Court severs the case and the Federal Circuit reverses this Court's dismissal of the '711 Patent, there could be two separate but parallel actions proceeding under the same core nucleus of facts, which is a waste of this Court's time and resources. Moreover, the severance sought by Polycom has the appearance of forcing the Federal Circuit to adjudicate the appeal of this Court's ruling of the '711 Patent, rather preserving the Federal Circuit's ability to exercise its discretion under 28 U.S.C. § 1292(b) to hear what is in reality an interlocutory appeal.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** FullView's motion for leave to amend the SAC and Polycom's motion to sever.

This order disposes of Docket Nos. 123 and 129.

**IT IS SO ORDERED**.

Dated: April 28, 2021

_____
EDWARD M. CHEN
United States District Judge

17