Katherine Vidal (SBN: 194971)
kvidal@winston.com
Kelly C. Hunsaker (SBN: 168307)
KHunsaker@winston.com
Eimeric Reig-Plessis (SBN: 321273)
ereigplessis@winston.com
Noorossadat Torabi (SBN 310124)
ntorabi@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025-1203
Telephone:      (650) 858-6500
Facsimile:       (650) 858-6550

Samantha M. Lerner (admitted *pro hac vice*)
slerner@winston.com
Karalena M. Guerrieri (admitted *pro hac vice*)
kguerrieri@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 606001
Telephone:      (312) 558-5600
Facsimile:       (312) 558-5700

David Paul Dalke (SBN: 218161)
ddalke@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant POLYCOM, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FullView, Inc., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Polycom, Inc., a Delaware Corporation,<br><br>Defendant. | Case No. 3:18-cv-00510-EMC<br><br>**DEFENDANT POLYCOM, INC.'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS**<br><br>Date:   November 18, 2021<br>Time:  1:30 PM<br>Place:  Courtroom 5, 17th Floor<br>Judge: The Hon. Edward M. Chen |

1

## NOTICE OF MOTIONS AND MOTIONS

2      **PLEASE TAKE NOTICE THAT** at 1:30 PM on November 18, 2021, or as soon thereafter

3  as this matter may be heard by the Honorable Edward M. Chen in Courtroom 5 of the above-entitled

4  Court, Defendant Polycom, Inc. ("Polycom") will, and hereby does, move the Court for an order

5  compelling Plaintiff FullView, Inc. ("FullView") to produce all documents in its possession or custody

6  that comply with Patent Local Rules 3-2(a)-(b) by November 24, 2021; and an order granting leave

7  under Federal Rule of Civil Procedure 15(a) to Polycom to amend its answer and counterclaims to

8  assert that U.S. Patent No. 6,128,143 ("the '143 Patent") is unenforceable due to inequitable conduct

9  before the U.S. Patent and Trademark Office ("Patent Office"), and to amend its invalidity contentions

10  regarding the '143 Patent to add a prior art device, a prior art article by Dr. Nalwa published in 1996

11  ("Nalwa 1996"), and contentions of invalidity due to on-sale bar and unenforceability due to

12  inequitable conduct pursuant to Patent Local Rule 3-6.

13      These motions are based on this Notice of Motions and Motions, the accompanying

14  memorandum of points and authority, the Declarations of Mr. Dalke, Mr. Keller, and Mr. Lutsch, filed

15  concurrently herewith, and all other papers and arguments submitted in this matter and any matters of

16  which the Court may take judicial notice.

17

## RELIEF REQUESTED

18      Polycom asks the Court to compel FullView to comply with Patent Local Rules 3-2(a)-(b),

19  and for leave to amend Polycom's answer and counterclaims under Federal Rule of Civil Procedure

20  15(a), and Polycom's invalidity contentions regarding the '143 Patent pursuant to Patent Local Rule

21  3-6.

22

23  Dated: October 19, 2021                         Respectfully submitted,

24                                                  WINSTON & STRAWN LLP

25                                                  By: /s/ *Katherine Vidal*
                                                    Katherine Vidal (CA SBN: 194971)
26                                                  KVidal@winston.com
                                                    Kelly C. Hunsaker (SBN: 168307)
27                                                  KHunsaker@winston.com
                                                    Eimeric Reig-Plessis (SBN: 321273)
28                                                  ereigplessis@winston.com

---

Noorossadat Torabi (SBN 310124)
ntorabi@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Samantha M. Lerner (admitted *pro hac vice*)
Karalena M. Guerrieri (admitted *pro hoc vice*)
SLerner@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

David Paul Dalke (SBN: 218161)
ddalke@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant
POLYCOM, INC.

1

## **TABLE OF CONTENTS**

2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1

   INTRODUCTION ........................................................................................................................ 1

I.     FACTUAL BACKGROUND ........................................................................................ 2

      A.    Procedural History .......................................................................................... 2

      B.    FullView Failed To Comply With Patent Local Rules 3-2(a)-(b) ................... 3

      C.    Polycom's Prior Diligent Searches For Prior Art ........................................... 3

      D.    Polycom's Discovery of a Prior Art Device, Nalwa 1996, and Inequitable Conduct ..... 4

      E.    Dr. Nalwa's Prior Sale and/or Offer to Sell Activities, On-Sale Bar and Related Inequitable Conduct ........................................................................ 6

      F.    Polycom's Diligence in Seeking Leave to Amend ......................................... 7

II.    LEGAL STANDARD .................................................................................................. 8

      A.    Requirements Under Patent Local Rules 3-2(a)-(b) ....................................... 8

      B.    Amendment of Pleadings and Inequitable Conduct......................................... 8

      C.    Amendment of Invalidity Contentions ......................................................... 10

III.  ARGUMENT ............................................................................................................. 10

      A.    The Court Should Compel FullView To Comply With Patent Local Rules................. 11

      B.    Good Cause Supports Polycom's Motion to Amend As Polycom Was Diligent in Discovering the Facts Underlying Its Proposed Amendments. ..................................... 13

      C.    The Keller Device, Nalwa 1996, and Dr. Nalwa's Prior Sale and/or Offer to Sell Activities Are Highly Relevant to the Invalidity of the '143 Patent............................. 16

      D.    Polycom's Proposed Amended Answer and Counterclaims Are Made in Good Faith and Are Not Futile ........................................................................ 20

      E.    FullView Will Not Be Prejudiced By Amendment of Polycom's Contentions or Answer. ................................................................................................ 22

   CONCLUSION ........................................................................................................................ 25

i

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-CV-00510-EMC

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Breville Pty Ltd. v. Storebound LLC,*
    Case No. 12-cv-01783-JST, 2013 WL 1758742 (N.D. Cal. Apr. 24, 2013) ................................21

5

6

*Coolsystems, Inc. v. Nice Recovery Systems LLC,*
    Case No. 16-cv-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016) ................................22

7

8

*DCD Programs, Ltd. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987) .......................................................................................................9

9

*Elec. Scripting Prod., Inc. v. HTC Am. Inc.,*
    No. 17-cv-05806-RS (RMI), 2021 WL 2530210 (N.D. Cal. June 21, 2021) ..............................22

10

11

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) .....................................................................................................9

12

13

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009).........................................................................................9, 21, 22

14

*Facebook, Inc. v. BlackBerry Limited,*
    2020 WL 864934 (N.D. Cal. Feb. 13, 2020) ..............................................................................24

15

16

*Foman v. Davis,*
    371 U.S. 178 (1962)......................................................................................................................8

17

18

*Fujifilm Corp. v. Motorola Mobility LLC,*
    No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) ........................10, 13, 14, 16

19

*FullView, Inc. v. Polycom, Inc.,*
    No. 18-cv-00510-EMC, 2021 WL 1668017 (N.D. Cal. Apr. 28, 2021)......................................10

20

21

*Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.,*
    No. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. July 1, 2008) ......................................10, 16, 24

22

*Halo Electronics, Inc. v. Bel Fuse Inc.,*
    2010 WL 3489593 (N.D. Cal. Sept. 3, 2010) .............................................................................14

23

24

*Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California,*
    648 F.2d 1252 (9th Cir. 1981) .....................................................................................................9

25

26

*iLife Techs. Inc. v. AliphCom,*
    Case No. 14-cv-03345-WHO, 2015 WL 890347 (N.D. Cal. Feb. 19, 2015) ...........................9, 21

27

28

*Illumina Inc. v. BGI Genomics Co.,*
    No. 20-cv-01465-WHO, 2021 WL 428632 (N.D. Cal. Feb. 8, 2021) ................................9, 21, 23

ii

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-CV-00510-EMC

*Intri-Plex Techs., Inc. v. NHK Int'l Corp.*,
No. 15-cv-01097-EMC-EDL, 2019 WL 920206 (N.D. Cal. Jan. 15, 2019)..................................24

*Jackson v. Bank of Haw.*,
902 F.2d 1385 (9th Cir. 1990) ....................................................................................................23

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) ......................................................................................................22

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-cv-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) ................................10

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-cv-00876-RS (JSC), 2016 WL 7386136 (N.D. Cal. Dec. 21, 2016) ................................10

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-cv-00876-RS (JSC), 2017 WL 3888869 (N.D. Cal. Apr. 17, 2017) ............................8, 11

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ........................................................................................................9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ......................................................................................................9

*Mead Johnson & Co. v. Premo Pharm. Labs, No. 75-1230*,
1980 WL 30332 (D.N.J. Sept. 11, 1980) ....................................................................................25

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ......................................................................................................9

*Naranjo v. Bank of Am. Nat'l Ass'n*,
No. 14-cv-02748-LHK, 2015 WL 913031 (N.D. Cal. Feb. 27, 2015) .........................................22

*Olympic Devs. AG, LLC v. Nintendo of Am., Inc*
No. 11-cv-00329 SBA (NC), 2011 WL 13373814, at *3 (N.D. Cal. Dec. 20, 2011)...............8, 12

*OpenTV, Inc. v. Apple Inc.*,
No. 15-cv-02008-EJD (NC), 2016 WL 3196643 (N.D. Cal. June 9, 2016) .......................8, 11, 13

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945).....................................................................................................................25

*In re RAH Color Techs. LLC Pat. Litig.*,
No. 18-MD-02874-SI, 2021 WL 1197478 (N.D. Cal. Mar. 30, 2021).........................................23

*THX, Ltd. v. Apple, Inc.*,
No. 13-cv-01161-HSG, 2016 WL 1718137 (N.D. Cal. Apr. 29, 2016) ..................................10, 16

1

2

**Statutes**

35 U.S.C. § 102...........................................................................................5, 8, 12, 15, 20

3

**Other Authorities**

4

37 C.F.R. § 1.56...................................................................................................................20

5

Fed. R. Civ. P. 9(b) ........................................................................................................9, 21

6

Fed. R. Civ. P.  15 ................................................................................................................8

7

8

Patent Local Rule 3-2............................................................................................ *passim*

9

Patent Local Rule 3-6...........................................................................................10, 13, 16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**INTRODUCTION**

3      Less than a month ago, on September 22, 2021, Dr. Nalwa and FullView, *for the first time*

4  *since prosecution of the '143 Patent commenced in 1998,* admitted that a key internal document

5  relating to the '143 Patent ("Nalwa 1996" as further discussed below) was publicly disclosed prior to

6  the '143 Patent's critical date of August 28, 1997.  Indeed, less than a month ago, Dr. Nalwa and

7  FullView admitted under oath that "[t]housands of individuals worldwide became aware of the

8  invention" between "1995–1998 and beyond" and "saw a prototype of the invention **or read the**

9  **technical memorandum that described it**."  Ex. 1 at 4 (emphasis added).  FullView cites the

10  production numbers for Nalwa 1996 as the technical memorandum that we now know was publicly

11  available, that described the invention, and was read by up to thousands of individuals.

12      Despite admitting under oath that Nawla 1996 described the '143 Patent's invention and having

13  personal knowledge that Nalwa 1996 was publicly available prior to the priority date of the '143

14  Patent, Dr. Nalwa and FullView **withheld this key document**, authored by Dr. Nawla, ***from the Patent***

15  ***Office***.  Dr. Nalwa and FullView **withheld this key document**, when required to disclose it and relevant

16  facts related to it, pursuant to this Court's rules, ***from Polycom***.  Indeed, instead of coming clean on

17  their very own prior art of which there can be no doubt they were aware, Dr. Nalwa and FullView

18  have reaped rewards from their misconduct licensing the '143 Patent both to Microsoft and then to

19  Polycom and then bringing this suit to try to recover even more money from Polycom.

20      Despite years of benefitting from the fruits of their misconduct, FullView only disclosed the

21  existence of this key evidence after they were emboldened by the fact that certain deadlines had passed

22  in this case.  FullView now asks this Court to elevate procedure over substance (and indeed justice)

23  and allow FullView to escape the ramifications of its actions.

24      Since FullView and Dr. Nalwa withheld the reference and its public disclosure from the Patent

25  Office, they committed fraud on the same and the '143 Patent should be held unenforceable.  Further,

26  FullView and Dr. Nalwa committed sanctionable conduct in this Court by continuing to withhold the

27  reference and its public availability from Polycom.  Polycom asks the Court to rectify the prejudice

28  FullView is trying to create by allowing Polycom to proceed with invalidity and unenforceability

1

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-cv-00510-EMC

arguments in this Court.  Because FullView already violated Patent Local Rules 3-2(a)-(b), Polycom further requests that the Court compel FullView to fully comply with Patent Local Rules 3-2(a)-(b) and produce all relevant documents in its possession or custody by November 24, 2021.

## I.   FACTUAL BACKGROUND

### A.   Procedural History

Although FullView filed this case in January 2018, the parties did not start fact discovery in earnest until August 2021.  Soon after FullView filed the original complaint, the case was effectively stayed pending the Reexamination Proceedings related to the '711 Patent and pending *Inter Partes* Review Proceedings ("IPR") related to the '143 Patent.  *See* Dkts. 16, 18, 24-27.  The Court held its initial Case Management Conference following decision on the IPR in October 2019.  Dkts. 43, 45. Between October 2019 and August 2021, the parties engaged in pleading stage motion practice, alternative dispute resolution, and claim construction related to the '143 Patent, all while adjusting and extending the existing case schedule to account for delays caused by the coronavirus pandemic. Indeed, for much of the time from October 2019 through August 2021, the parties intentionally and jointly refrained from engaging in fact discovery and other costly endeavors in order to pursue a resolution of the dispute.  *See, e.g.*, Dkt. 76 ("The Parties have exchanged some documents for the purposes of narrowing the case and preparing for mediation. No other discovery has been taken to date."); Dkt. 90 (same); Dkt. 107 (same).  Throughout the two years, the parties tried to narrow the claims in dispute, engaged two separate mediators, spoke with Mr. Lex Brainerd multiple times, and the attorneys spoke on countless occasions to try to devise creative resolutions to the case, including finding a way to accelerate FullView's appeal of the dismissal of the '711 Patent.  It was only when all of these efforts failed that the parties agreed that they should move forward with a piecemeal approach to the litigation—addressing invalidity of the '143 Patent first and if necessary, moving on to damages.

At a Case Management Conference on August 10, 2021, the Court set a March 10, 2022 date to hear the parties' motions for summary judgment of invalidity and ordered the parties to work out a refined stipulated schedule, including fact discovery deadlines, expert reports and briefing.  *See* Dkt. 154.  The parties exchanged emails regarding an interim schedule but never reached an agreement.

Nonetheless the parties started fact discovery soon after the August 10, 2021 Case Management Conference.  Polycom served its first set of interrogatories and document requests on August 23, 2021, and its second set of interrogatories and document requests on September 27, 2021.  FullView served its first set of document requests on September 8, 2021.

At a subsequent Case Management Conference on October 12, 2021, the Court set a briefing schedule for Polycom's instant motion and directed the parties to discuss interim deadlines related to fact and expert discovery while maintaining the March 10, 2022 hearing date.  Dkt. 161.

## B.   FullView Failed To Comply With Patent Local Rules 3-2(a)-(b)

FullView served its disclosure of asserted claims and infringement contentions on March 2, 2020.  *See* Ex.[1] 11.  Under Patent Local Rules 3-2(a)-(b), FullView was required to produce certain documents, including those sufficient to show "discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell . . . the claimed invention," and "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit."  In its March 2020 disclosures, FullView represented that no document exists that fall under either section.  *Id.* at 6.  ***This was false***.  As discussed below, FullView's responses to Polycom's interrogatories served months later, in September 2021, showed that documents within the scope of these rules did in fact exist, were available to be disclosed in March 2020, and yet were improperly withheld from production by FullView.  *See* Ex. 1.

## C.   Polycom's Prior Diligent Searches For Prior Art

Following FullView's filing of the original complaint in the case, Polycom diligently searched for prior art related to the '143 Patent.  For example, Polycom's counsel conducted prior art searches in September 2018 and in December 2018, including through internet searching, employing a prior art search firm, and consultation with a subject matter expert.  Lutsch Decl. at ¶¶ 5-9.  Specifically, in December 2018, Polycom's counsel retained a professional prior art search firm and Dr. Stephen D. Fantone to further assist in finding relevant prior art.  *Id.* at ¶¶ 7, 9.  And, in June 2020, Polycom again

---

[1] All references to "Ex. ___" refer to the exhibits attached to the Declaration of David P. Dalke in support of Polycom' Motions, submitted concurrently herewith.

enlisted Dr. Fantone's help in performing further prior art search in advance of submission of its

invalidity contentions in August 2020.  *Id.* at ¶ 10.

### D. Polycom's Discovery of a Prior Art Device, Nalwa 1996, and Inequitable Conduct

Following the Court's August 10, 2021 order, Polycom began interviewing potential testifying

expert witnesses to provide invalidity expert reports, deposition testimony, and, if necessary, trial

testimony.   One potential expert interviewed was Mr. Kurtis Keller, a research engineer in the

Department of Computer Science at the University of North Carolina Chapel Hill.  Keller Decl. at ¶

1.  Mr. Keller indicated that he had built a panoramic viewing device meeting all the limitations in the

asserted claims of the '143 Patent before the August 28, 1998 filing date of the application leading to

the '143 Patent.[2]  *Id.* at ¶¶ 4-5.  This prior art device was a joint venture among the University of North

Carolina, Brown University, and the University of Utah.  *Id.* at ¶ 4.  Mr. Keller's panoramic viewing

device was operationally displayed on July 29, 1997 at the University of Utah, and a non-operational

version was displayed August 3–8 1997 in Los Angeles, CA, at the ACM Siggraph convention

attended by over 48,000 people.  *Id.* at ¶ 7.  Mr. Keller also provided Polycom's counsel with a 1999

paper written by Majumder and others ("the Majumder article"), including a figure depicting Mr.

Keller's device.  *Id.* at ¶ 11; *see also id.* Keller Exhibit E at 2.  The Majumder article was not previously

known to Polycom because it is dated after the priority date of the '143 Patent, and therefore, it would

not have been captured by Polycom's various prior art search efforts.

The Majumder article also described other previously known panoramic viewing devices,

including one developed by Dr. Vishvjit ("Vic") Nalwa—the named inventor of the asserted '143

Patent–described in a January 1996 technical memorandum ("Nalwa 1996").  *See id.* at 2, 8.  Nalwa

1996 includes several figures that are substantially similar to the figures in the '143 Patent, as well as

a photograph of a prototype device that appears to meet all limitations of the asserted claims of the

'143 Patent.  *See* Ex. 5 at POLY00000956, 957, 959.  For example, as described *infra* Section III.C,

Nalwa 1996's Figure 18 shows "[a] mirrored pyramid" that "was constructed" and includes

---

[2] In response to Polycom's Interrogatory No. 1, FullView has asserted August 28, 1998 as the priority
date for the asserted claims of the '143 Patent.  *See* Ex. 1 at 4.

1   "individual mirrors of the pyramid [that] are of polished steel" in addition to "four cameras" that are

2   "all visible in Figure 18."  *Id.*  The footer of Nalwa 1996 is stamped with a legend that reads, "Bell

3   Laboratories Technical Memorandum, BL0115500-960115-01, © 1996 Bell Labs."  Ex. 5.

4          Despite its obligation to do so, FullView never disclosed this 1996 memorandum to Polycom

5   in its disclosures as required by the Patent Local Rules 3-2(a)-(b), which would have alerted Polycom

6   that this seemingly internal memorandum had in fact been publicly disclosed to third parties.  Instead,

7   FullView affirmatively represented that no document falling under the rules exists.  *See* Ex. 11 at 6.

8   On its face, the 1996 memorandum appears to be an internal Bell Labs document.  Indeed, nothing on

9   the face of Nalwa 1996 suggested that this Bell Labs Technical Memorandum was published outside

10  Bell Labs before August 28, 1997.  *See, e.g.,* Ex. 10 at 2 (explaining how a different document "was

11  just a Bell Labs technical memorandum" that "was never published outside the laboratory.")

12         Counsel for Polycom was aware that the 1996 Nalwa memorandum was published on

13  FullView's website, but FullView's website did not launch until 1999, *after* the '143 Patent's filing

14  date. There was no indication on the website or otherwise that the Nalwa 1996 memorandum was

15  publicly available *before* August 28, 1997 so as to qualify as prior art under Section 102(b) of the

16  Patent Act.  *See* Dalke Decl. at ¶ 7.  In addition, one of the prior art references Polycom cited in its

17  Invalidity Contentions is an article by Takahito Kawanishi, Kazumasa Yamazawa and others, titled

18  "Generation of High-resolution Stereo Panoramic Images by Omnidirectional Imaging Sensor Using

19  Hexagonal Pyramidal Mirrors," presented at a conference held on August 17-18, 1998 ("Yamazawa

20  1998").  Ex. 9.  Yamazawa 1998 cited to Nalwa 1996 in a footnote, indicating that Nalwa 1996 was

21  publicly available before August 1998 but did not evidence its public availability before the critical

22  date of August 28, 1997.  Thus, before serving Polycom's invalidity contentions regarding the '143

23  Patent, counsel for Polycom diligently investigated and searched for evidence of whether Nalwa 1996

24  had been cataloged by a library before August 28, 1997 but was unable to find a library cataloged

25  version of the 1996 memorandum, which would have suggested that this technical memorandum was

26  available at a time when it would qualify as prior art.  *Id.*

27         FullView, on the other hand, knew full well not only of Nalwa 1996 but of its public

28  availability before the '143 Patent filing date.  Instead of being forthright and abiding by this Court's

1  rules, FullView represented that the document did not exist.

2       The Majumder article's reference to Nalwa 1996 led Polycom's counsel to revisit whether

3  Nalwa 1996 was publicly available before August 28, 1997.  *Id*. at ¶ 8.  After additional searching,

4  Polycom's counsel discovered U.S. Patent No. 5,760,826 to the named inventor Shree K. Nayer

5  ("Nayer '826 Patent"), citing and describing the contents of Nalwa 1996 before this critical date.  *See*

6  Ex. 6.  Despite public disclosure more than a year before his patent application was filed, Dr. Nalwa

7  did not disclose Nalwa 1996 to the Patent Office during the prosecution of the '143 Patent, just as

8  FullView did not disclose Nalwa 1996 to Polycom as required by Patent Local Rule 3-2.

9         **E.  Dr. Nalwa's Prior Sale and/or Offer to Sell Activities, On-Sale Bar and Related**
          **Inequitable Conduct**
10

11      Despite its obligation to do so pursuant to Patent Local Rule 3-2(a), FullView also did not

12  disclose other documents within its possession or custody evidencing discussions with, or disclosures

13  to a third party, or sale of, or offer to sell, the claimed invention before the '143 Patent's priority date.

14  Ex. 11 at 6.  On September 22, 2021, FullView served its responses to Polycom's first set of

15  interrogatories.  Ex. 1.  Interrogatory No. 1, overlapping in scope with the Patent Local Rule 3-2(b),

16  asked FullView to describe in detail facts and circumstances surrounding the alleged conception and

17  actual reduction to practice (if any) of the claimed subject matter in each asserted claims of the '143

18  Patent.  *Id.* at 3.  In response, Dr. Nalwa stated, under oath, that "[t]housands of individuals worldwide

19  became aware of the invention" between "1995–1998 and beyond" and "saw a prototype of the

20  invention or read the technical memorandum that described it," i.e., Nalwa 1996, which was produced

21  to Polycom's counsel on the same day.  *Id*. at 4; *see also* Dalke Decl., Ex. 8 (Nalwa 1996, produced

22  by FullView with Bates numbers FULLVIEW002004-34).  FullView's responses thus confirmed

23  Nalwa 1996's public availability before August 28, 1997.  Despite its misrepresentations to the Patent

24  Office and to Polycom, this is the first time Dr. Nalwa and FullView admitted that Nalwa 1996 was

25  publicly available before the critical date.

26      Additionally, in the same response on September 22, 2021, FullView admitted that several

27  individuals from around the world traveled to Holmdel, N.J., "to meet with the inventor and seek

28  business arrangements with him and his employer" during this same timeframe. Ex. 1 at 4. FullView's

6

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-cv-00510-EMC

responses thus indicated to Polycom for the first time that Dr. Nalwa engaged in prior sale and/or offer to sell activities that could invalidate the asserted claims of the '143 Patent.  The Patent Local Rules required FullView to produce this information with its March 2020 disclosures, but FullView failed to do so.  As a result of this belated disclosure, on September 27, 2021, Polycom served its second set of interrogatories and requests for documents to discover additional facts related to the "business arrangements" mentioned in FullView's response to Polycom's first set of interrogatories.  Ex. 2.

### F.    Polycom's Diligence in Seeking Leave to Amend

Had FullView made the disclosures required by Patent Local Rules 3-2(a) and (b) when it was required to do in March 2020, Polycom could have and would have included this information in its Invalidity Contentions in August 2020 and moved to amend its answer to add an inequitable conduct counterclaim.  FullView's failure to comply with its obligations under the Patent Local Rules hid crucial information and hampered Polycom's ability to defend its case as to the Nalwa 1996 memorandum, which did not appear in Polycom's library searches and by all accounts appeared to be an internal Bell Labs memorandum that was later disclosed by FullView.  As soon as the facts related to the prior art device and the public availability of Nalwa 1996 became known to and were confirmed by Polycom's counsel, Polycom diligently provided the information to FullView's counsel, and in a letter dated September 27, 2021, advised of its intent to move the Court to allow Polycom to amend its invalidity contentions and amend its answer to add a counterclaim alleging inequitable conduct and sought FullView's consent.  *See* Ex. 3.  FullView responded on September 28, 2021, advising that it would oppose any Polycom motions and stated, among other things, that "[t]here is no disclosure or suggestion in Nalwa 1996 that is claimed in the '143 Patent."  Ex. 7.  Beyond being inconsistent with the content of the 1996 memorandum itself and with Patent Local Rule 3-2(a), this statement flatly contradicts FullView's Interrogatory Response No. 1, in which Dr. Nalwa stated, under oath, that "[t]housands of individuals worldwide became aware of the invention" between "1995–1998 and beyond" and "**saw a prototype of the invention or read the technical memorandum that described it**," i.e., Nalwa 1996.  Ex. 1 at 4 (emphasis added).

On September 30, 2021, Polycom requested a Case Management Conference, which was scheduled for October 12, 2021.  Dkt. 158.  During the conference, the Court set a briefing schedule

for Polycom's instant motions, maintained the March 10, 2022 hearing date for summary judgment, and instructed the parties to propose interim deadlines for fact and expert discovery.  Dkt. 161.

## II.   LEGAL STANDARD

### A.   Requirements Under Patent Local Rules 3-2(a)-(b)

Patent Local Rules 3–2(a)-(b) obligate the party asserting patent infringement to produce to defendant documents "sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit," and "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit."  Rule 3-2 rejects the idea that the patentee can withhold these centrally relevant documents by unilaterally claiming they do not practice the patent.[3] The "spirit of the patent local rules [] is to ensure early crystallization of the parties' theories, and specifically, to place the burden on the plaintiff to quickly decide on and disclose the contours of its case."  *OpenTV, Inc. v. Apple Inc.*, No. 15-cv-02008-EJD (NC), 2016 WL 3196643, at *3 (N.D. Cal. June 9, 2016).  A patentee's failure to comply with these local rules "is not a mere technicality," when it would prejudice the accused infringer's defenses in the matter.  *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2017 WL 3888869, at *2 (N.D. Cal. Apr. 17, 2017).  The court may compel a patentee to produce documents that comply with Patent Local Rules 3–2(a)-(b). *See, e.g., Olympic Devs. AG, LLC v. Nintendo of Am., Inc.*, No. 11-CV-00329 SBA (NC), 2011 WL 13373814, at *3 (N.D. Cal. Dec. 20, 2011).

### B.   Amendment of Pleadings and Inequitable Conduct

Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave [to amend pleadings] when justice so requires."  Accordingly, the United States Supreme Court has stressed that, in the court's discretion, leave should be "freely given" under Rule 15.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Ninth Circuit has further instructed that "the court must remain guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or

---

[3] "A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102." *See* Patent Local Rule 3-2(a).

technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks and alterations omitted).  Thus, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

"Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The party opposing amendment bears the burden of showing prejudice.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  The prejudice "must be substantial." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  "Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper disposition on the merits.'" *Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981).

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (internal citation omitted).  Allegations of inequitable conduct must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b), which requires that the pleadings "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328.  At the pleading stage, an inference of deceptive intent must be reasonable and drawn from the allegations of underlying fact. *See Illumina Inc. v. BGI Genomics Co*., No. 20-cv-01465-WHO, 2021 WL 428632, at *2 (N.D. Cal. Feb. 8, 2021) (granting defendant's motion to add inequitable conduct claim to the case).  To amend its pleadings, Polycom need not **prove** that inequitable conduct took place, only that the specifics have been adequately **pled**. *See id*. at *4; *see also iLife Techs. Inc. v. AliphCom,* Case No. 14-cv-03345-WHO, 2015 WL 890347, at *4 n.1 (N.D. Cal. Feb. 19, 2015) ("I decline to impose a standard that requires more than that set forth in *Exergen*, and will not apply *Therasense* at this stage of the proceedings.").

1

### C.    Amendment of Invalidity Contentions

2      Patent Local Rule 3–6 applies in a patent infringement action.  *FullView, Inc. v. Polycom, Inc.*,

3 No. 18-cv-00510-EMC, 2021 WL 1668017, at *3 (N.D. Cal. Apr. 28, 2021).   Under this rule,

4 amendment of invalidity contentions "may be made only by order of the Court upon a timely showing

5 of good cause."  The Rule provides one example of good cause that, absent undue prejudice, would

6 support granting leave: "Recent discovery of material, prior art despite earlier diligent search."  *Id.*

7 "In determining whether good cause exists, the Court considers (1) whether the moving party was

8 diligent in moving to amend its contentions and (2) whether the non-moving party would suffer

9 prejudice if leave to amend were granted."  *THX, Ltd. v. Apple, Inc.*, No. 13-CV-01161-HSG, 2016

10 WL 1718137, at *2 (N.D. Cal. Apr. 29, 2016).   The Court may also consider "the relevance of the

11 newly-discovered prior art, whether the request to amend is motivated by gamesmanship, [and] the

12 difficulty of locating the prior art."   *Id.* (quoting *Golden Hour Data Sys., Inc. v. Health Servs.*

13 *Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *2 (N.D. Cal. July 1, 2008)).

14      Notably, Patent Local Rule 3–6 "does not require perfect diligence" to show good cause.

15 *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745, at *4 (N.D.

16 Cal. Feb. 5, 2014) (granting leave to amend invalidity contentions eight months after discovery of the

17 prior art).  "Prejudice is typically found when amending contentions stand to disrupt the case schedule

18 or other court orders."  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC),

19 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016).   Courts have explained that the fact that the

20 amendment will cause the non-moving party to perform more work than it would have to perform

21 otherwise does not constitute prejudice.  *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,

22 No. 14-CV-00876-RS (JSC), 2016 WL 2855260, at *9 (N.D. Cal. May 13, 2016).  A finding of no

23 prejudice moots the Patent Local Rules' concern of "sandbagging opponents late in the discovery

24 period."  *Fujifilm*, 2014 WL 491745, at *6.

25
### III.   ARGUMENT

26      Polycom approached FullView and this Court as soon as it became aware of the bases for the

27 amendments it currently seeks.  Polycom has good cause to amend its invalidity contentions to add

28 the prior art Keller Device, Nalwa 1996, and on-sale bar invalidity arguments due to its prior diligence

and FullView's failure to satisfy its obligations under the Patent Local Rules.  Further, Polycom's proposed amendment to its answer to add a counterclaim of inequitable conduct would not be futile as Polycom can plead with particularity the elements of inequitable conduct.  There is no prejudice to FullView resulting from these amendments.  Indeed, FullView cannot argue prejudice because its ***own*** failure to comply with the local rules hid several facts underlying the instant motions until recently, at which point Polycom acted promptly to seek leave to amend both its answer and invalidity contentions.  Further, FullView will not be prejudiced because Polycom's proposed amendments do not impact any Court ordered, or other agreed-to, deadlines.

### A.    The Court Should Compel FullView To Comply With Patent Local Rules

As an initial matter, underlying the facts here is FullView's failure to comply with the Patent Rules Local, which became apparent through Polycom's diligent investigation and FullView's recent interrogatory responses.  The local rules "place the burden on the plaintiff to quickly decide on and disclose the contours of its case." *OpenTV*, 2016 WL 3196643, at \*3.  Further, documents falling within the scope of Patent Local Rules 3-2(a)-(b) are uniquely in plaintiff's possession.  FullView was required to produce documents under Patent Local Rules 3-2(a)-(b) when it served its disclosure of asserted claims and infringement contentions in March 2020.  Recent discovery, including FullView's responses to Polycom's first set of interrogatories, showed that FullView was in possession of such documents, directly contradicting FullView's representations in its March 2020 disclosures that no such documents exist.

FullView's failure to comply with these local rules "is not a mere technicality," because it prejudiced Polycom from earlier developing its defenses until its recent discovery of the facts that were uniquely in FullView's possession.  *See Karl Storz Endoscopy-Am.,* 2017 WL 3888869, at \*2.  Parties are entitled to rely on the opposing side's compliance with the Patent Local Rules, and more particularly, the opposing side's affirmative representations under the Patent Local Rules.  FullView should not be allowed to hide information and documents that it was obligated to produce early in the case under the Patent Local Rules, while affirmatively representing no such documents exist, only to produce them later in the case and argue it is too late for Polycom to cure the prejudice that FullView's belated production created.  At the very least, FullView cannot argue prejudice now based on the

proposed amendments related to Nalwa 1996, the on-sale bar argument, and the inequitable conduct counterclaim, as FullView should have produced the related information and documents to Polycom in March 2020.  FullView should not be able to commit fraud on the Patent Office and fraud on this Court and Polycom and escape the consequences by procedurally timing when it comes clean.

FullView has argued that Nalwa 1996 does not disclose all the elements of the asserted claims of the '143 Patent.  *See* Dkt. 160 at 9.  Further, during the meet and confer to discuss the issue of FullView's noncompliance with Local Rule 3-2(a) and (b), FullView's counsel again stated that it was FullView's position that the prototype in Nalwa 1996 is related only to the (now-dismissed) '711 Patent and unrelated to the invention of the '143 Patent—a position which strains credulity when, as detailed *supra* Section III.C, the prototype described and pictured some (indeed, Polycom would argue all) of the limitations of the asserted claims of the '143 Patent.  FullView's position is wrong.  First, Polycom's interrogatories were limited to the '143 Patent as that is the only patent remaining in this case.  Second, even if Nalwa 1996 were somehow only responsive to the dismissed '711 Patent, it still should have been disclosed under the Patent Local Rules when FullView served its infringement contentions.

In any event, FullView's belief does not excuse its failure to comply with the requirements set forth in the Patent Local Rules.  In particular, Patent Local Rule 3-2(a) provides that "[a] party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102."  Allowing FullView to decide what documents should be produced based on what FullView believes support or do not support Polycom's defenses and counterclaims would turn the Patent Local Rules as well as the Federal Rules of Civil Procedure on their head.

Further, only FullView knows what other relevant documents within the scope of Patent Local Rule 3-2(a)-(b) are in its possession and have been withheld.  FullView's actions continue to prejudice Polycom and its ability to develop its defenses in this case. The Court should compel FullView to produce all documents that comply with Patent Local Rules 3–2(a)-(b), including documents responsive to Polycom's second set of discovery requests, by November 24, 2021.  *See, e.g., Olympic Devs. AG,* 2011 WL 13373814, at *3.

The Courts in this district sanction a party who fails to comply with Patent Local Rules 3–2 by, among other things, precluding it from relying on documents or evidence other than those timely disclosed pursuant to the local rules.  *See*, *e.g.*, *OpenTV,* 2016 WL 3196643, at *3.  FullView should be precluded from relying on belatedly disclosed information that benefits it.  Relatedly, FullView should not be allowed to refute belatedly disclosed information that harms it.

**B.      Good Cause Supports Polycom's Motion to Amend As Polycom Was Diligent in Discovering the Facts Underlying Its Proposed Amendments.**

Good cause support Polycom's motion to amend as, notwithstanding FullView's failures to disclose, Polycom was diligent in uncovering the public availability of Nalwa 1996, the grounds for on-sale bar defense theory, and the Keller Device—be it through fact discovery of FullView or prior art searching.  Soon after discovering the Keller Device, public availability of Nalwa 1996 before August 1997, and grounds for the on-sale bar defense, Polycom notified FullView and this Court.

Patent Local Rule 3-6 notes that one example of good cause, absent undue prejudice, for leave to amend the contentions is the "[r]ecent discovery of material prior art despite earlier diligence." Further, in determining good cause, the courts in this district consider the difficulty of locating prior art. *See, e.g., Fujifilm*, 2014 WL 491745, at *4.  The courts in this district recognize that "identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier.  Indeed, the Patent Local Rules specifically acknowledges the possibility that a party may need to supplement invalidity contentions with information found during discovery." *Id.* (granting leave to amend invalidity contentions to assert five additional prior art references, the court finding that the accused infringer showed diligence in its efforts to find the references).

This Court's decision in *Sunpower Corp. Sys. v. Sunlink Corp.* granting defendant's leave to amend the invalidity contentions is instructive.  2009 WL 1657987 (N.D. Cal. June 12, 2009).  In *Sunpower,* the Court found the defendants adequately showed diligence with respect to certain prior art "assemblies or installations," as they only discovered these references recently despite earlier diligent search. *Id.* at *2.  The Court noted that "assemblies or installations are prior art references that are difficult to find.  There is no database to assist in the search for this kind of prior art; rather,

1    the prior art may be found largely by 'pounding the pavement.'"  *Id.*

2        Similarly, the court in *GeoTag, Inc. v. Zoosk, Inc.*, granted defendant's leave to supplement

3    invalidity contentions to add five prior-art systems.  2013 WL 4427430, *2-*3 (N.D. Cal. Aug. 15,

4    2013).  The court found that the accused infringers showed sufficient diligence as the prior art was not

5    in their physical possession.  *Id., see also Halo Electronics, Inc. v. Bel Fuse Inc*., 2010 WL 3489593

6    (N.D. Cal. Sept. 3, 2010) (granting leave to amend invalidity contentions to allege four additional

7    items of prior art (including four devices and alleged on-sale activity of the patentee) in part because

8    that these prior art references could not have been located through a typical search).

9        First, as described above in Section I.C, Polycom was diligent in searching for relevant prior

10   art before August 31, 2020, when Polycom served its invalidity contentions with respect to the '143

11   Patent by performing internet searches for prior art, engaging a prior art search firm, and working with

12   a subject matter expert.  *See* Lutsch Decl. at ¶¶ 5-10.  Despite this diligence, it was not until August

13   26, 2021, when Polycom discovered Mr. Keller's prior art device when searching for potential expert

14   witnesses to retain in this case.  *See* Dalke Decl. at ¶¶ 2-4; Keller Decl. at ¶¶ 2-5.  This is because a

15   device—even a device on public display—is unlikely to be uncovered by a prior art search firm who

16   would be targeting publications and patents.  Thus, given the difficulties of discovering prior art

17   devices such as the prior art device here, Polycom acted diligently in uncovering Mr. Keller's prior art

18   device.

19       Second, Polycom was diligent in that it served written discovery requests as soon as the parties

20   entered into formal discovery that sought information relevant to Nalwa 1996 and prior sale, even

21   though this information should have been produced by FullView in March 2020.  Indeed, beyond the

22   Keller Device, the remaining facts underlying Polycom's proposed amendments, including Nalwa

23   1996's public availability before the August 1997 critical date and the offers for sale, were uniquely

24   in FullView's possession and should have been produced to Polycom months ago pursuant to Patent

25   Local Rules 3-2(a)-(b).  It was not until Polycom served formal discovery in August 2021, once the

26   parties had reached an impasse as to settlement and moved forward with the case in earnest, and

27   FullView provided its response in September 2021 that Polycom discovered evidence of Dr. Nalwa's

28   on-sale bar activities related to the alleged invention claimed in the asserted claims of the '143 Patent.

1    Polycom served two additional interrogatories and requests for production to gather further evidence

2    related to Dr. Nalwa's "business arrangements" prior to the critical date that implicate the on-sale bar.

3    As explained above, the Court should compel FullView to produce the requested discovery as any

4    delay would further prejudice Polycom.

5         Third, despite FullView's failure to comply with local rules, and its affirmative representations

6    that no document within the scope of Patent Local Rules 3-2(a)-(b) exists, Polycom diligently

7    investigated whether Nalwa 1996 was publicly available before the critical date prior to serving its

8    invalidity contentions. *See* Dalke Decl. at ¶ 7.  The evidence indicated that Nalwa 1996 was available

9    in 1998 per the Yamazawa article and in 1999 on the FullView website, but there was no indication

10   that Nalwa 1996 was publicly available before the August 1997 critical date.[4]  Availability in 1998

11   and 1999 was not sufficient for Nalwa 1996 to qualify as prior art because under Sections 102(a) and

12   102(b) of the Patent Act, disclosures by the inventor must be available more than one year before the

13   effective filing date of the claimed invention.  Indeed, Nalwa 1996 did not suggest on its face that it

14   was publicly available before the critical date because it was designated a Technical Memorandum

15   and contained a specific internal Bell Labs numbering system.  Nonetheless, counsel for Polycom

16   investigated whether Nalwa 1996 had been cataloged in a library by August 28, 1997.  *Id.*  Counsel

17   for Polycom was unable to find such library cataloged version of Nalwa 1996.  *Id*.

18        As noted above, the Majumder article, published in 1999, provided by Mr. Keller, led

19   Polycom's counsel to reevaluate Nalwa 1996's public availability once again as the Majumder article

20   cites to Nalwa 1996.  *Id.* at ¶ 8.  Counsel for Polycom searched the Internet, including the Semantic

21   Scholar and Google Scholar databases to see whether Nalwa 1996 had been publicly disclosed and/or

22   cited in other publications prior to August 28, 1997.  *Id.*  Through this search, Polycom's counsel

23   discovered the Nayer '826 Patent, which issued on June 2, 1998 but was filed on May 10, 1996.  *Id*.

24   at ¶ 8; *see also* Ex. 6.  Importantly, the specification of the Nayer '826 Patent cites and describes the

25   contents of Nalwa 1996 before the critical date of the '143 Patent, *see* Ex. 6, strongly suggesting that

26   _____

27   [4] FullView has argued that Polycom should have known about Nalwa 1996 because it was cited in the
     Yamazawa 1998 article Polycom cited in its invalidity contentions.  Regardless of whether Nalwa
     1996 was cited in Yamazawa or other papers that published in 1998 does not insulate or excuse
28   FullView's failure to comply with the Patent Local Rules.

15

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-cv-00510-EMC

Nalwa 1996 was 102(b) prior art to the '143 Patent.  That Polycom's counsel only recently found evidence that Nalwa 1996 is 102(b) prior art does not detract from its diligence.  *See, e.g., Fujifilm*, 2014 WL 491745, at *4 (Patent Local Rule 3–6 "does not require perfect diligence").  It was FullView's failure to comply with the Patent Local Rules that delayed discovery of the relevant facts regarding public availability of Nalwa 1996 before the critical date.  It was only in FullView's September 22, 2021 interrogatory responses that FullView identified Nalwa 1996 and confirmed its prior art status.

Soon after confirming these relevant facts, Polycom notified FullView of its intent to move the Court to allow Polycom to amend its invalidity contentions and amend its answer to add a counterclaim alleging inequitable conduct based on Dr. Nalwa's failure to disclose Nalwa 1996 to the Patent Office during the prosecution of the '143 Patent.  *See* Dalke Decl. at ¶ 11.

In sum, Polycom's motion to amend is made with good cause as Polycom was diligent in uncovering the facts underlying its proposed amendments and discovered the facts related to Nalwa 1996, prior sale or offer to sell activities, and the inequitable conduct, despite FullView's attempt to hide these facts until recently.

## C.    The Keller Device, Nalwa 1996, and Dr. Nalwa's Prior Sale and/or Offer to Sell Activities Are Highly Relevant to the Invalidity of the '143 Patent.

The Keller Device, Nalwa 1996, and Dr. Nalwa's prior sale and/or offer to sell activities are highly relevant to the invalidity of the '143 Patent.  In determining good cause, the Court may also consider "the relevance of the newly-discovered prior art…."  *THX, Ltd.*, 2016 WL 1718137, at *2 (quoting *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *2 (N.D. Cal. July 1, 2008)).  The prior art is relevant because it consists of an invalidating device, meeting all limitations of the '143 patent, by another as well as the description of a "prototype" from the inventor himself.

First, with regard to the Keller Device, by the middle of 1997, researchers at Brown University, the University of Utah and the University of North Carolina collaborated to develop a wide field of view, high resolution video camera cluster, which meets the limitations of the '143 Patent.  Keller Decl. at ¶¶ 8-9; *see also id.* Keller Exhibits B-C.  In July 1997, the group—which included Dr. Henry

Fuchs—published a webpage describing the camera's design, which "will use six conventional cameras in a single cluster to construct an image with a 180 × 80 degree field of view, with six times the resolution of a single camera. *Id.* Keller Exhibits B-C. The group explained that the "device will be used to capture high resolution images for 3D scene reconstruction as well as for conventional televideo systems." *Id*. The group recognized that the "technical challenge in developing such a cluster lies in the difficulty of properly merging all the views into a seamless whole," which "can only be achieved by optically arranging all the cameras to have the same center of projection." *Id*. By September 1997, the "camera cluster with a single center of projection" had been disclosed to the Office of the General Counsel at the University of North Carolina for patentability review. Keller Decl. at ¶ 6; *see id.* Keller Exhibit A. Importantly, the invention disclosure indicates that the camera cluster was conceived of on February 20, 1997 and reduced to practice on July 14, 1997. *Id.* at ¶ 6. Further, the Report of Invention indicates that the camera was operationally displayed on July 29, 1997 at the University of Utah, and a non-operational version was displayed August 3–8 1997 in Los Angeles, CA. *Id.* at ¶ 7.

In 1999, Dr. Fuchs's group published a paper describing their "camera cluster" which was "built from multiple cameras to simulate a virtual camera with 360 degree horizontal field of view and a 90 degree vertical field of view." *Id.* Keller Exhibit E at 2. Notably, Figure 2 of the Majumder article "shows a CAD design of the geometry next to a photograph of the implemented system."

 

Figure 2: One side of the Camera Cluster

*Id*. The camera cluster described in the Majumder article was conceived of at the University of North Carolina, built by collaborators at the University of Utah and has been on public display at the

17

University of North Carolina in the museum at the Department of Computer Science since 2008. *Id.* at ¶¶ 4, 6, 12. A photograph of the actual device on display is shown below. *See also id.* Keller Exhibit F.



The camera cluster, the Keller Device, meets every limitation of asserted claims 10–12 of the '143 Patent as described in detail in Polycom's proposed amended invalidity contentions attached here as Exs. 14 (redlined) and 15 (clean version), and as such is highly relevant to the invalidity of the '143 Patent.

Second, Nalwa 1996 is highly relevant to the invalidity of the '143 Patent as it is at best anticipating of '143 Patent and at worst renders it invalid for obviousness. Nalwa 1996 describes "design of a true omni-directional camera: a camera that can capture, at any instant, a 360° view of a scene effectively from a single viewpoint." *See* Ex. 5 at 2. Further, Nalwa 1996 indicates that the "design [] has been implemented." *Id.* at 3. More particularly, Nalwa 1996 explains that the "design … consists of a mirrored *n*-sided pyramid with a pinhole camera looking off each side of the pyramid such that the mirror image of every pinhole (in the mirror the pinhole looks off) lies at the same location in space." *Id.* at 6. Notably, Nalwa 1996's Figure 18 shows "[a] mirrored pyramid" that "was constructed" and includes "individual mirrors of the pyramid are of polished steel" in addition to "four

1    cameras" that are "all visible in Figure 18."  *Id*.  Figure 18 is reproduced below:



Figure 18  Photograph of implemented mirrored pyramid with attached CCD cameras.

The photograph depicts a "panoramic viewing apparatus" having a "plurality of image processing devices," *i.e.*, CCD cameras, "a pyramid shaped element having a plurality of reflective side facets" and "a support member interesting an inner volume of the pyramid shaped element, the pyramid shaped element being secured to the support member and the plurality of the image processing devices being secured to the support member" as required by claim 10 of the '143 Patent.  *See* '143 Patent at 16:20–34.  Below is a close-up of a portion of Nalwa Figure 18 suggesting that the pyramid shaped element is attached or fastened to a support member that intersects an inner volume of the pyramid shaped element.



DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-CV-00510-EMC

1  Moreover, even if FullView is successful in arguing that the implemented design shown in

2  Figure 18 does not anticipate claim 10 of the '143 Patent, Nalwa 1996 at the very least would render

3  obvious the apparatus claimed in the asserted claims of the '143 Patent.  Accordingly, Nalwa 1996

4  easily meets the materiality standard set forth in 37 C.F.R. § 1.56 and should have been disclosed to

5  the Patent Office during prosecution of the application leading to the '143 Patent.

6  Finally, Dr. Nalwa's prior sale and/or offer to sell activities are also highly relevant to the

7  invalidity of the asserted claims of the '143 Patent.  As discussed above, FullView recently admitted

8  in its response to Polycom's interrogatory that between "1995-1998 and beyond," "[t]housands of

9  individuals worldwide became aware of the invention in that period, several traveling to Holmdel,

10  including from the San Francisco Bay Area and later from Japan and Germany, to meet with the

11  inventor and seek business arrangements with him and his employer." Ex. 1 at 4.  Polycom discovered

12  these "business arrangements" occurred only after FullView served its responses on September 22,

13  2021, despite FullView's obligation to produce this information in March 2020 along with its

14  disclosure of asserted claims and infringement contentions.  Given FullView's failure to comply with

15  the Patent Local Rules, Polycom served additional discovery requests to gather additional facts

16  regarding these "business arrangement." Ex. 2.  Polycom deserves the opportunity to show any such

17  "business arrangement" that happened before August 28, 1997 run afoul of the on-sale bar to

18  patentability provided in Section 102(b) of the Patent Act.

19        **D.    Polycom's Proposed Amended Answer and Counterclaims Are Made in Good
20                Faith and Are Not Futile**

21  Polycom's proposed amendments to its answer and counterclaims are made in good faith and

22  are not futile, as is evidenced by the detailed proposed pleadings that set out inequitable conduct with

23  the requisite particularity.  Polycom has adequately alleged "the specific who, what, when, where, and

24  how of the material misrepresentation or omission committed before the PTO" as required under Rule

25  9(b).  *See Illumina,* 2021 WL 428632, at *3 (citing *Exergen*, 575 F.3d at 1328).

26  Polycom pleads that Dr. Nalwa, the named inventor of the '143 Patent who had a duty of

27  candor as an inventor who was substantively involved in the prosecution of the application leading to

28  the '143 Patent, did not disclose Nalwa 1996 as relevant prior art to the Patent Office at any point

1    during the prosecution of the application leading to the '143 Patent or the subsequent post-grant

2    proceedings.  *See* Dalke Decl., Exs. 12, 13 ¶¶ 11-15, 20-49.  Polycom also pleads specific facts to

3    support its claim that Dr. Nalwa is the author of Nalwa 1996, as well as the sole named inventor of the

4    '143 Patent, that Dr. Nalwa knew when Nalwa 1996 was published, and that it "described" the subject

5    matter disclosed and claimed in the '143 Patent.  *Id.* at ¶¶ 20, 44-45.  Polycom further pleads that

6    Nalwa 1996 is material and that the Patent Office would not have allowed the asserted claims had it

7    been aware of Nalaw 1996.  *Id.* at ¶¶ 25-39.[5]

8         Polycom has also adequately pleaded facts regarding Dr. Nalwa's intent to deceive the Patent

9    Office.  "A reasonable inference [of specific intent] is one that is plausible and that flows logically

10   from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575

11   F.3d at 1329 n.5.  Polycom's alleged facts include that Dr. Nalwa did not disclose Nalwa 1996 to the

12   Patent Office during the prosecution of the application leading to the '143 Patent, or after the '143

13   Patent issued.  *Id.* at ¶ 48.  Taken together with the facts that Dr. Nalwa was aware of Nalwa 1996 and

14   its status as prior art, Polycom has sufficiently alleged facts from which it could reasonably be inferred

15   that that Dr. Nalwa had the requisite specific intent to deceive the Patent Office.  *See Illumina*, 2021

16   WL 428632, at *4 (specific intent adequately pleaded when defendant alleged that patentee borrowed

17   two specific methodologies that were key to creating the claimed inventions, did not make clear to the

18   patent examiner that these methodologies had been adopted from two prior art references, and did not

19   disclose one of the references at all as prior art); *Coolsystems, Inc. v. Nice Recovery Systems LLC*,

20   Case No. 16-cv-02958-PJH, 2016 WL 6091577, *4 (N.D. Cal. Oct. 19, 2016) (specific intent

21   adequately pleaded where defendant alleged that relevant prior art – which was allegedly virtually

22   identical to claimed invention - was "buried" on 8th page of a list of 176 other minimally relevant

23

24   _____
     [5] Courts in this district have declined to engage in a technical and fact-specific materiality inquiry,
25   including whether the allegedly withheld prior art is cumulative of other prior art disclosed to the
     patent examiner.  *See Illumina*, 2021 WL 428632, at *5; *iLife Techs.*, 2015 WL 890347, at *6 (N.D.
26   Cal. Feb. 19, 2015) (concluding that "an analysis of the European references' materiality as prior art
     is not appropriate at this stage"); *see also Breville Pty Ltd. v. Storebound LLC*, Case No. 12-cv-01783-
27   JST, 2013 WL 1758742, at *6 (N.D. Cal. Apr. 24, 2013) ("The Court does not read Exergen as
     requiring a court to determine, on the face of the pleadings, whether the allegedly missing material is
28   in fact material and not cumulative.").

references).

Polycom's amended pleadings—which encompass an additional 39 paragraphs setting forth these allegations in details—provide more than sufficient particularity to establish the "who, what, when, where, and how" for the instances of inequitable conduct alleged in the Polycom's proposed amended pleadings. *Exergen*, 575 F.3d at 1328. Therefore, the proposed amendments are not futile and have been made in good faith based on the recent discovery and disclosure of the public availability of Nalwa 1996 before August 1997.

### E.   FullView Will Not Be Prejudiced By Amendment of Polycom's Contentions or Answer.

FullView cannot identify any cognizable prejudice that would result from Polycom's amendment of its answer and invalidity contentions at this stage of the proceeding. First, FullView will suffer no prejudice from these proposed amendments given that FullView, through its President and CEO, Dr. Nalwa, knew of the facts underlying Polycom's proposed amendments related to Nalwa 1996, the on-sale bar argument, and the inequitable conduct claim, and should have anticipated that these amendments would be forthcoming. *See Elec. Scripting Prod., Inc. v. HTC Am. Inc.*, No. 17-cv-05806-RS (RMI), 2021 WL 2530210, at *3 (N.D. Cal. June 21, 2021). Indeed, FullView's failure to comply with the local rules to produce these facts earlier in the case prejudiced Polycom by preventing it from developing its defenses earlier in the case.

Further, there is no prejudice as "this is not a case where the 'parties have engaged in voluminous and protracted discovery'" prior to Polycom's proposed amendments. *Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-cv-02748-LHK, 2015 WL 913031, at *4 (N.D. Cal. Feb. 27, 2015) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)). While FullView filed this case in January 2018, the parties did not start fact discovery in the earnest until August 2021 when they reached an impasse as to settlement discussion. Soon after FullView filed the original complaint, the case was stayed pending the Reexamination Proceedings related to the '711 Patent. Dkt. 16. The Court held its first Case Management Conference following the stay in October 2019. Dkts. 43, 45. Between October 2019 and August 2021, the parties engaged in pleading stage motion practice, alternative dispute resolution, and claim construction related to the '143 Patent. The parties had intentionally refrained

1    from pursuing formal discovery and other expenditures that could be avoided during the course of

2    their various settlement discussions and attempts at mediation until the parties reported their impasse

3    to the Court in August 2021.

4        Nor will Polycom's proposed amendments lead to the nullification of prior discovery, *compare*

5    *Jackson v. Bank of Haw*., 902 F.2d 1385, 1387–88 (9th Cir. 1990), or render moot or otherwise impact

6    any substantive motion filed by FullView.  *See Yodlee*, 2007 WL 1454259, at *3.  Further, the Court

7    has not yet set a trial date, and Polycom's motions do not impact any Court ordered deadline or any

8    other agreed-to deadlines.  *In re RAH Color Techs. LLC Pat. Litig*., No. 18-MD-02874-SI, 2021 WL

9    1197478, at *3 (N.D. Cal. Mar. 30, 2021).  Further, the '143 Patent expired on August 28, 2018, and

10   thus there is no prejudice to FullView because there are no ongoing damages.

11       While allowing Polycom to add its proposed inequitable conduct defense and counterclaim

12   and to add Mr. Keller's prior art device, Nalwa 1996 and an on-sale bar argument to its invalidity

13   contentions may result in additional costs to FullView, and possibly additional discovery, courts in

14   this district have held these potential costs are not unduly burdensome or prejudicial.  *See, e.g.*,

15   *Illumina Inc. v. BGI Genomics Co*., 2021 WL 428632, at *3.  Similarly, there is no prejudice to

16   FullView resulting from Polycom's addition of the prior art device to its invalidity contentions.  The

17   prior art device "will likely be addressed, primarily, during the expert discovery process," and

18   FullView will have sufficient time prior to the close of expert discovery to investigate the prior art

19   device.  *See Sunpower* 2009 WL 1657987 at *3 (finding no prejudice to plaintiff that would result

20   from defendants' amended invalidity contentions in part because plaintiff had "sufficient time prior to

21   the close of discovery [] to investigate the [added] prior art references.")

22       FullView cannot argue that it has been prejudiced simply because claim construction has taken

23   place.  The Court adopted FullView's construction for the one of the two terms in dispute, "pyramid

24   shaped element," while adopting Polycom's construction for the other term, "inner volume [of the

25   pyramid shaped element]".  *See* Dkt. No. 142 at 1-2; Dkt. No. 137 at 7.  FullView cannot identify any

26   specific prejudice regarding the proposed amendments in relation to the claim construction

27   proceedings.  *See Facebook, Inc. v. BlackBerry Limited,* 2020 WL 864934, at *10 (N.D. Cal. Feb. 13,

28   2020) (rejecting plaintiff's conclusory assertion of prejudice)*; see also Intri-Plex Techs., Inc. v. NHK*

*Int'l Corp.*, No. 15-CV-01097-EMC-EDL, 2019 WL 920206, at \*7 (N.D. Cal. Jan. 15, 2019) (rejecting plaintiff's argument that prejudice existed because the supplemental "invalidity grounds were not raised in the course of the claim construction proceedings," where plaintiff failed to "articulate how the prior art references" defendants sought "to add would have changed those proceedings"), *report and recommendation adopted*, 2019 WL 917059 (N.D. Cal. Feb. 25, 2019).

Even though the Patent Local Rules reflect a more conservative approach to amendment than the liberal policy for amending pleadings, the rationale for that conservative approach is not threatened here. The Patent Local Rules were designed, among other reasons, to prevent the parties from shifting their theories late in discovery, leaving the opposing party with little time to conduct discovery on a new theory. *See O2 Micro*, 467 F.3d at 1365. Polycom's amended contentions are based principally on the information Polycom discovered after it started interviewing expert witnesses, and information FullView should have disclosed, but failed to disclose, months ago. Further, FullView would have ample time to conduct fact and expert discovery related to Polycom's proposed amendments. *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.* is instructive. No. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. July 1, 2008) (finding no prejudice and granting defendant's motion for leave to amend its answer and invalidity contentions). FullView cannot identify any prejudice—let alone undue prejudice—that would result from Polycom's proposed amendments.

Polycom, on the other hand, will suffer severe prejudice if the Court denies leave to amend. Such a denial would hinder Polycom's ability to present all legally relevant arguments in response to FullView's infringement claims. Inclusion of Polycom's inequitable conduct defense and its invalidity arguments based on the prior art device, Nalwa 1996, and the on-sale bar are critical to a full and fair adjudication of FullView's infringement claims. Moreover, the public has a "paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct." *Mead Johnson & Co. v. Premo Pharm. Labs, No. 75-1230*, 1980 WL 30332, at \*46 (D.N.J. Sept. 11, 1980) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815–16 (1945)). Further, FullView would then be allowed to benefit twice from failure to disclose Nalwa 1996—once to the Patent Office and a second time when it should have been disclosed to Polycom with FullView's infringement contentions. Thus, Polycom should be permitted the opportunity to pursue this defense

1   and counterclaim by amending its pleadings, as well as pursuing its invalidity arguments based on the

2   prior art device, Nalwa 1996, and the on-sale bar by amending its invalidity contentions.

3   **CONCLUSION**

4       For the foregoing reasons, Polycom has shown good cause and respectfully requests that the

5   Court grants it leave to amend its invalidity contentions regarding the '143 Patent to add the prior art

6   device and Nalwa 1996 as prior art references and claim charts to show the prior art device and Nalwa

7   1996 anticipate and/or render obvious claims 10-12 of the '143 Patent, and to add contentions of

8   invalidity due to on-sale bar and unenforceability due to inequitable conduct.  Polycom also requests

9   that the Court grants it leave to amend its answer and counterclaims to add an affirmative defense and

10  counterclaim of inequitable conduct.  Further, Polycom requests that the Court compel FullView to

11  fully comply with Patent Local Rules 3-2(a)-(b) and produce all relevant documents in its possession

12  or custody by November 24, 2021.

13  Dated: October 19, 2021        WINSTON & STRAWN LLP

14      By: /s/ *Katherine Vidal*
15      Katherine Vidal (CA SBN: 194971)
        KVidal@winston.com
16      Kelly C. Hunsaker (SBN: 168307)
        KHunsaker@winston.com
17      Eimeric Reig-Plessis (SBN: 321273)
        ereigplessis@winston.com
18      Noorossadat Torabi (SBN 310124)
        ntorabi@winston.com
19      WINSTON & STRAWN LLP
20      275 Middlefield Road, Suite 205
        Menlo Park, CA 94025
21      Telephone: (650) 858-6500
        Facsimile: (650) 858-6550
22
23      Samantha M. Lerner (admitted *pro hac vice*)
        Karalena M. Guerrieri (admitted *pro hoc vice*)
24      SLerner@winston.com
        WINSTON & STRAWN LLP
25      35 W. Wacker Drive
        Chicago, IL 60601
26      Telephone: (312) 558-5600
        Facsimile: (312) 558-5700
27
28      David Paul Dalke (SBN: 218161)

ddalke@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, California 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant
POLYCOM, INC.

DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO COMPEL AND
FOR LEAVE TO AMEND ITS ANSWER AND INVALIDITY CONTENTIONS
CASE NO. 3:18-CV-00510-EMC