UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULLVIEW, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>POLYCOM, INC.,<br><br>    Defendant. | Case No. 18-cv-00510-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER, INVALIDITY CONTENTIONS, AND TO COMPEL PRODUCTION**<br><br>Docket No. 164 |

## I.  INTRODUCTION

Plaintiff FullView, Inc. ("FullView") filed this lawsuit against Defendant Polycom, Inc. ("Polycom") alleging patent infringement. FullView is the owner of a group of patents disclosing technology involving the creation of composite images—*i.e.*, a device capable of producing panoramic photographs. Now pending before the Court is a single motion by Polycom encompassing three requests: (1) Leave to amend its answer to add a claim for inequitable conduct by FullView; (2) Leave to amend its invalidity contentions; and (3) An order compelling FullView to comply with Patent Local Rules 3-2(a)-(b). Docket No. 164 ("Motion").

For the following reasons, the Court **DENIES** all three requests and, thus, the motion in its entirety.

## II.  BACKGROUND

A.  Factual Background

FullView, the owner of the '143 Patent and U.S. Patent No. 6,700,711 ("the '711 Patent"), asserts Polycom infringes on its patents. The '143 Patent relates to panoramic viewers used in videoconferencing devices. *See* Docket No. 75 ("SAC") ¶¶ 12-13. More specifically, it describes

a compact "omni-directional or panoramic viewer" based on three primary components. Docket No. 75, Exh. B ("'143 Patent"), claims 10-12.

First, there is at least "one pyramid shaped element having a plurality of reflective side facets facing in different directions." *Id.* at 16:23-25. Second, there are image-processing devices, such as cameras, that are oriented around the pyramid to provide a continuous 360-degree view of the area. *Id*. at 2:3-5; 16:20-22. Each camera is pointed towards a different side of the mirrored pyramid and as a result, these cameras have a virtual optical center positioned within the pyramid. *Id*. at 2:16-20; 16:26- 28. Third, there is a "support member" (i.e., a post) that intersects the pyramid shaped object's "inner volume." *Id*. at 11:54-56; 16:30-34. Some of the cameras are also attached to this support member. *Id*. at 11:60-63; 16:30-34.

B. Procedural Background

1. *Inter Partes* Review History

In January 2012, Polycom filed an *inter partes* reexamination (IPR) challenging the validity of the '711 Patent based on obviousness grounds. *See* SAC ¶ 18; *see also Polycom, Inc. v. FullView, Inc*., 767 F. App'x 970, 983 (Fed. Cir. 2019). On January 4, 2017, the Patent Trial and Appeal Board (PTAB) upheld the '711 Patent as valid; the U.S. Court of Appeals for the Federal Circuit affirmed the PTAB's decision on April 29, 2019. SAC ¶¶ 21, 23. On January 31, 2019, Polycom sought an IPR of the '143 Patent. *Id*. ¶ 24. However, the PTAB denied this petition as well as Polycom's request for rehearing on September 10, 2019. *Id*. ¶ 25.

2. Litigation History

On January 23, 2018, FullView filed its first complaint. Docket No. 1. On July 2, 2020, FullView filed its second amended complaint alleging: infringement of both the '711 and '143 Patents under 35 U.S.C. § 271 by (1) direct infringement; (2) infringement by inducement; and (3) infringement via the doctrine of equivalents. SAC ¶¶ 59-66. Polycom moved to dismiss the second amended complaint's claims pertaining to the '711 Patent because that patent (a) was directed at nonpatentable subject matter and (b) sought to protect an abstract idea without an inventive concept. *Id*. The Court granted Polycom's motion to dismiss on both grounds. Docket No. 105. The Court later denied FullView's motion to file a third amended complaint which

sought to add two additional patents to the litigation and to amend the infringement contentions to assert claims from those patents. Docket No. 144.

Accordingly, only claims 10 through 12 of the '143 Patent are currently in dispute in this litigation. *See* Docket No. 110 ("Joint Statement") at 2; SAC ¶ 47. On April 5, 2021, the Court issued an order construing the disputed terms of the '143 Patent. Docket No. 137.

C.      Polycom's Factual Assertions Relevant to this Motion

In support of the instant motion, Polycom asserts additional facts regarding the parties' actions and conduct before and during the litigation that are allegedly relevant to deciding this motion.

Polycom asserts that after the Court ordered the parties to stipulate to fact discovery deadlines on August 10, 2021, Docket No. 154, Polycom interviewed Mr. Kurtis Keller, a research engineer at the University of North Carolina, who "indicated that he had built a panoramic viewing device" (the "UNC device") allegedly "meeting all the limitations in the asserted claims of the '143 Patent before the August 28, 1998 filing date of the application leading to the '143 Patent". Motion at 11. The UNC device was "operationally displayed on July 29, 1997 at the University of Utah, and a non-operational version was displayed August 3–8, 1997 in Los Angeles, CA" at a "convention attended by over 48,000 people." *Id.* Polycom contends the UNC device anticipates the '143. *Id.* at 32.

Keller apparently provided Polycom's counsel with a 1999 paper written by Majumder, which described the UNC device as well as previously known panoramic viewing devices. The Majumder paper included a citation to a technical memorandum written in 1996 ("Nalwa 1996") by Dr. Vishvjit Nalwa, the named inventor of the asserted patent '143 at issue in this case. *Id.* at 11-12. According to Polycom, Nalwa 1996 "includes several figures that are substantially similar to the figures in the '143 Patent, as well as a photograph of a prototype device that appears to meet all limitations of the asserted claims of the '143 Patent." *Id.* at 11. In support of this claim, Polycom cites Figure 18 of the paper, which shows "[a] mirrored pyramid" that "was constructed" and includes "individual mirrors of the pyramid [that] are of polished steel" in addition to "four cameras" that are "all visible in Figure 18." *Id.* (citing Docket No. 164-6 at 21). The figure is

3

reproduced below.



Figure 18 Photograph of implemented mirrored pyramid with attached CCD cameras.

Docket No. 164-6 at 31. Polycom contends Nalwa 1996 also anticipates the '143 Patent. Motion at 32.

Polycom concedes that it was previously aware that Nalwa 1996 was created as a Technical Memorandum for Bell Labs, but Polycom contends it did not know that the paper "was publicly available before August 28, 1997 [the critical date for the '143 patent application], so as to qualify as prior art for the '143 patent under Section 102(b) of the Patent Act." However, Polycom contends it was only when it was prompted by the 1999 Majumder article's citation to Nalwa 1996 to "revisit whether Nalwa 1996 was publicly available before August 18, 1997," Motion at 12-13, thus excusing its failure to assert Nalwa 1996 in its invalidity contentions. Polycom also concedes that "one of the prior art references Polycom cited in its Invalidity Contentions" – published in 1998 ("Yamazawa 1998") – cited to Nalwa 1996. However, Polycom

contends that before it served its invalidity contentions, it was "unable to find a library cataloged version of the 1996 memorandum." *Id.* at 12. It was only after seeing Nalwa 1996 cited in the 1999 Majumder article that Polycom renewed its investigative efforts which enabled it to discover that Nalwa 1996 was publicly available before August 28, 1997, the critical application date for the '143 patent application. *Id.* at 13.

Polycom contends Dr. Nalwa engaged in inequitable conduct. Despite public disclosure before the critical date, a year before his patent application was filed, Dr. Nalwa did not disclose Nalwa 1996 to the Patent Officer during the prosecution of the '143 Patent. *Id.* Similarly, Polycom contends that FullView's failure to disclose Nalwa 1996 during initial disclosures violated Rule 3-2(a). And, Polycom argues, Dr. Nalwa belatedly revealed in his response to Polycom's interrogatories that "thousands of individuals worldwide became aware of the invention between 1995-1998. *Id.* In Polycom's telling, "FullView's [interrogatory] responses thus confirmed Nalwa 1996's public availability before August 28, 1997" and "[d]espite its misrepresentations to the Patent Office and to Polycom, this is the first time Dr. Nalwa and FullView admitted that Nalwa 1996 was publicly available before the critical date." *Id.*

Finally, Polycom accuses FullView of a decades-long conspiracy and fraud that it contends renders the '143 Patent unenforceable:

> Despite admitting under oath that Nalwa 1996 described the '143 Patent's invention and having personal knowledge that Nalwa 1996 was publicly available prior to the priority date of the '143 Patent, Dr. Nalwa and FullView withheld this key document, authored by Dr. Nalwa, from the Patent Office. Dr. Nalwa and FullView withheld this key document, when required to disclose it and relevant facts related to it, pursuant to this Court's rules, from Polycom. Indeed, instead of coming clean on their very own prior art of which there can be no doubt they were aware, Dr. Nalwa and FullView have reaped rewards from their misconduct licensing the '143 Patent both to Microsoft and then to Polycom and then bringing this suit to try to recover even more money from Polycom.
>
> Despite years of benefitting from the fruits of their misconduct, FullView only disclosed the existence of this key evidence after they were emboldened by the fact that certain deadlines had passed in this case. FullView now asks this Court to elevate procedure over substance (and indeed justice) and allow FullView to escape the ramifications of its actions.
>
> Since FullView and Dr. Nalwa withheld the reference and its public

5

>disclosure from the Patent Office, they committed fraud on the same and the '143 Patent should be held unenforceable.

Motion at 8.

Based on these assertions, Polycom seeks leave from the Court to amend its answer to allege a counterclaim of inequitable conduct by FullView, amend its invalidity contentions to include information about Nalwa 1996 and public use of the UNC device described in Majumder 1999, and to compel FullView to comply with Patent Local Rule 3-2 by completing its disclosure of relevant materials.

D. <u>FullView's Responses to Polycom's Assertions</u>

FullView responds to Polycom's assertions by suggesting that Polycom's story of its recent discovery of Nalwa 1996 does not make logical sense, nor is it relevant to the claims at issue in this case.

First, FullView focuses on Polycom's concession that Polycom cited Yamazawa 1998 as a prior art in its Invalidity Contentions; the Yamazawa article in turn cited Nalwa 1996. Docket No. 168 ("Opp.") at 8. FullView contends that Polycom has long-known that Nalwa 1996 was cited in a paper published in *1998* (and even referred to that 1998 article their invalidity contentions). Hence, there is no basis for Polycom's contention that its recent discovery of the 1999 Majumder article was a revelatory moment for Polycom to investigate whether Nalwa 1996 was in circulation before the critical date of August 28, 1997. *Id.* As FullView puts it, "Why would the Majumder article . . . prompt a course of action that Yamazawa 1998 did not prompt?" *Id.* In light of Polycom's longstanding knowledge about the existence of Nalwa 1996, FullView argues there was no basis for Polycom's putative inability to find out that Nalwa 1996 was in circulation prior to the 1997 patent application date. Indeed, as FullView points out, Nalwa 1996 has been publicly available on FullView's website for over a decade, that every page of the publicly-available document had a stamp showing that copyright date in 1996. Further, FullView contends a simple search on Google, Google Scholar, Semantic Scholar, or even the PTO's patent search engine show that the paper was in the public domain since before the critical date. Opp. at 5, 10.[1]

---

[1] The Court confirmed that running a Google scholar search of the title of Nalwa 1996 and then clicking on "cited by" quickly reveals that the paper was cited in the application for U.S. Patent

Second, FullView contends that Polycom's assertions that FullView has engaged in inequitable conduct and been engaged in a decades-long fraud on the PTO, this Court and the public are meritless. Specifically, FullView explains that nothing in Nalwa 1996 discloses the invention in the '143 Patent at issue here. FullView notes that the '143 Patent is closely related to and includes all the apparatus-related disclosures of the '711 Patent. Opp. at 11 ("In fact, the first 13 figures of the '143 Patent are from the '711 Patent and not from Nalwa 1996. The inclusion of substantially all the apparatus-related disclosures of the '711 Patent in the '143 Patent is hardly unexpected, as each of the claims in the '143 Patent represents an improvement on the inventions included in the '711 Patent, which preceded Nalwa 1996."); Docket No. 75, Exh. B ('143 Patent) at 1-2. The '711 Patent application was filed on November 30, 1995, before the publication of Nalwa 1996. *See* Docket No. 1, Exh. A ('711 Patent) at 2; Docket No. 168-2 ("Nalwa Decl.") at ¶ 1. Hence, the relevant question is whether anything in Nalwa 1996 disclosed elements of the patented invention of the '143 Patent that is not also disclosed in the '711 Patent. Opp. at 10. Polycom does not address this issue and thus fails to demonstrate Nalwa 1996 disclosed anything new.

More centrally, FullView contends that nothing in Nalwa 1996 discloses the invention in Patent '143. Claim 10 of the '143 Patent (at issue in this case) is described as follows:

> 10. A panoramic viewing apparatus, comprising:
>
> plurality of image processing devices, each having an optical center and a field of view;
>
> a pyramid shaped element having a plurality of reflective side facets facing in different directions, each of at least two of the plurality of reflective side facets redirecting a field of view of one of the plurality of image processing devices to create a plurality of virtual optical centers;
>
> **and a support member intersecting an inner volume of the pyramid shaped element**, the pyramid shaped element being secured to the support member and the plurality of image processing devices being secured to the support member.

'143 Patent at 16:20-16:35 (emphasis added). And claim 12, the other claim at issue in this case,

---

No. 5,760,826 issued in June 1998.

is "the panoramic viewing apparatus of claim 10, wherein the support member is hollow." *Id.* at 16:38. The '143 Patent exemplifies claims 10-12 through its Figure 17 which illustrates the inclusion of the "supporting member." *See id.* at 11:43-12:19.



Docket No. 168-2 ("Nalwa Decl.") ¶ 15; *see also* '143 Patent at 11:43-12:19 ("... Reflective pyramid 800 is mounted to stand or post 802 using a support member such as hollow tube 804. The pyramid is secured to hollow tube 804 at vertex end 806. The hollow tube is secured to stand 802 by angle brackets 808. Hollow tube 804 extends beyond vertex end 806 so that cameras 810 may be supported by tube 804. The cameras are mounted to tube 804 by strap or belt … It should be noted that hollow tube 804 may be replaced with a solid support member … It is also possible to invert the viewer of FIG. 17 so that the viewer is supported by end 830 of tube 804.").

Importantly, Nalwa 1996 *does not* depict an invention that includes or refers in any way to "a support member intersecting an inner volume of the pyramid shaped element," not to a "support member [that] is hollow." *Id.* This is significant. Polycom's filings during the IPR Proceedings clearly shows that Polycom is aware that the *new* aspect of the '143 Patent was the addition of a "support member":

8

> Nalwa is an earlier European patent application by the inventor of the '143 patent and discloses a panoramic viewing system that is identical to the single-polyhedral structure described in the '143 patent. Nalwa's disclosure is included in the '143 patent; Figures 1-10 of Nalwa are the same as Figures 1-10 of the '143 patent, including the single-polyhedral embodiments in Figures 2-6. (Ex. 1006, 1:10-5:6, Figs. 2-6). **The only difference between Nalwa and the challenged claims of the '143 patent is the addition of a support member [with the claimed intersection]**. (Ex. 1002 ¶ 44).

Docket No. 118-1, Exhibit C at 13 (emphasis added).

The only evidence in support of Polycom's argument that Nalwa 1996 discloses the '143 Patent amounts to a citation to a single image in Nalwa 1996: Figure 18 (reproduced above). Motion at 11-12, 25-26. But, nothing in Figure 18 or elsewhere in Nalwa 1996 mentions, describes or refers to a "support member intersecting an inner volume of the pyramid shaped element."

Polycom asserts that Figure 18 depicts a support member, quoting the language of the '143 Patent, and then incorporates a zoomed-in image Figure 18, which Polycom proclaims "suggest[s] that the pyramid shaped element is attached or fastened to a support member that intersects the inner volume of the pyramid shaped element." Motion at 26.



*Id*. Setting aside the fact that Polycom does not point to anything in the text of Nalwa 1996 that supports what Polycom insinuates, Polycom's claim that Figure 18 "suggest[s]" that there is a "support member that intersects the inner volume of the pyramid shaped element" requires x-ray vision in order to be credited. Figure 18 shows the exterior of a device, with no indication of how

the interior is constructed. Indeed, it appears that post to which the cameras are attached is connected to a flange on the pyramid shaped element, not a support member that runs through the pyramid.

Moreover, FullView objects to Polycom's selective quoting of FullView's interrogatory responses to suggest that FullView engaged in a decades-long fraud. As FullView argues:

> Polycom quotes FullView's response to Polycom's Interrogatory No. 1 several times — at 8, 13, 14, 27 — but only partially, so that it loses context:
>
>> Dr. Nalwa stated, under oath, that "[t]housands of individuals worldwide became aware of the invention" between "1995–1998 and beyond" and "saw a prototype of the invention or read the technical memorandum that described it"
>
> As the accompanying Nalwa Declaration explains in detail at ¶¶ 18–25, the "invention" being referred to above, in context, is that of the '711 Patent. Polycom could not have misunderstood this because Dr. Nalwa also said in the same response that, "The asserted claims (of the '143 patent) were reduced to practice in 1999-2000: A product that implemented these claims was sold to USC around May 2000." In verifying FullView's responses, Dr. Nalwa also affirmed under oath in response to Polycom's Interrogatory No. 4 that "[b]efore the filing of the patent application on August 28, 1998, the inventor and his employer at the time, Bell Laboratories, kept the invention [of the asserted claims] in strict confidence."

Opp. at 12.

Finally, FullView points out that Polycom fails to demonstrate due diligence in discovering the UNC device more than a year after it filed its invalidity contention. FullView argues that Polycom also failed to exercise diligence in asserting Nalwa 1996 for the first time in the pending motion on October 19, 2021. FullView, thus, argues that Polycom is not entitled to amend its invalidity contentions. *Id*.

### III. LEGAL STANDARDS

A. Amendment of Pleadings

Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave [to amend pleadings] when justice so requires." However, "the grant or denial of a subsequent opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether leave should be granted pursuant to a district court's

10

1 discretion, the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id*. Courts have held that "the crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

In determining undue delay the question is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Indeed, "amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Mach. & Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir. 1986) (internal citations omitted). Further, a motion to amend may be denied on grounds of futility of the proposed amendments irrespective of other factors. *See Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018).

B.   Inequitable Conduct

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (internal citation omitted). Allegations of inequitable conduct must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b), which requires that the pleadings "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328.

C.   Amendment of Invalidity Contentions

Patent Local Rule 3-6 governs the process for any amendment of infringement contentions:

> Amendment of the Infringement Contentions or the Invalidity

11

> Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b) Recent discovery of material, prior art despite earlier diligent search; and
>
> (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.
>
> The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.

The Patent Local Rules "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). The purpose of the Patent Local Rules "is to ensure early crystallization of the parties' theories, and specifically, to place the burden on the plaintiff to quickly decide on and disclose the contours of its case." *OpenTV, Inc. v. Apple Inc.*, No.15-cv-02008-EJD-NC, 2016 WL 3196643, at *3 (N.D. Cal. June 9, 2016). Thus, amendments to a party's contentions require a showing of good cause. *See* Pat. L.R. 3-6.

The moving party bears the burden of establishing diligence. *O2 Micro*, 467 F.3d at 1355. Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," although a court in its discretion may elect to do so. *See id*. at 1368 (affirming district court's denial of leave to amend upon finding the moving party was not diligent, without considering the question of prejudice to the non-moving party). "If the court finds that the moving party has acted with diligence, it must then determine whether the nonmoving party would suffer prejudice if the motion to amend were granted." *Apple Inc. v. Samsung Elecs. Co. Ltd*, No. 12-cv0630-LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (internal quotation marks omitted).

The Court may also consider "the relevance of the newly-discovered prior art, whether the request to amend is motivated by gamesmanship, [and] the difficulty of locating the prior art." *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 WL

12

1  2622794, at *2 (N.D. Cal. July 1, 2008).

2  D.  Patent Local Rules 3-2(a)-(b)

3  Patent Local Rules 3-2(a)-(b), Document Production Accompanying Disclosure provide

4  the following:

> With the "Disclosure of Asserted Claims and Infringement Contentions," the party claiming patent infringement shall produce to each opposing party or make available for inspection and copying:
>
> (a) Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit. A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;
>
> (b) All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier[.]

*Id.*

### IV.  ANALYSIS

A.  Overview

Polycom's motion raises four questions for the Court:

1. Should Polycom be granted leave to amend its answer under Fed. R. Civ. P. 15 to assert a counterclaim that the non-disclosure of Nalwa 1996 by FullView to the patent office during the prosecution of the '143 Patent constituted inequitable conduct?

2. Has Polycom provided good cause to be permitted to amend its Invalidity Contentions to include Nalwa 1996?

3. Did FullView violate Patent Local Rules 3-2(a) and (b) by not including Nalwa 1996 in the documents it produced with its Infringement?

4. Has Polycom provided good cause to be permitted to amend its Invalidity

13

Contentions to allege third party "public use" of the UNC device (described in Majumder 1999) before the critical date of the '143 Patent?

On the first two questions, the Court's analysis begins by assessing whether Polycom exercised diligence in discovering and asserting Nalwa 1996. For the reasons explained below, the Court finds that Polycom was not diligent, and, thus, the answer to the first two questions is no. Furthermore, on the first and third questions, the Court determines that Polycom has not alleged facts sufficient to state a claim for inequitable conduct. Nor has Polycom alleged enough to show that FullView violated Patent Local Rule 3-2. Finally, as to the fourth question, the Court concludes that Polycom fails to demonstrate due diligence and, thus, is not given leave to amend its invalidity contentions.

B. <u>Polycom Has Not Demonstrated Diligence in Discovering and Asserting Nalwa 1996</u>

A threshold question relevant to whether Polycom should be granted leave to amend its answer to include a claim of inequitable conduct and to amend its invalidity contentions to assert Nalwa 1996 is whether Polycom exercised diligence in discovering and asserting the article. *See Acri,* 781 F.2d at 1398 ("[A]mendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."); *O2 Micro*, 467 F.3d at 1355 (moving party bears the burden of establishing diligence to amend invalidity contentions). Polycom's concession that it was aware of Nalwa 1996 before it served it Invalidity Contentions on August 31, 2020 because Nalwa 1996 was cited to by Yamazawa 1998 is enough to end the inquiry. Motion at 12.

Polycom has not provided any good excuse for its failure to cite Nalwa 1996 as prior art in its invalidity contentions on August 31, 2020. Polycom concedes it was aware of Nalwa 1996 based on its inclusion of Yamazawa 1998 in its invalidity contentions on August 31, 2020 and that it knew Nalwa 1996 was publicly available on FullView's website for many years prior to the commencement of this litigation. *Id.* Yet Polycom waited until October 19, 2021 to move to amend its answer and invalidity contentions.

Polycom's assertions that it repeatedly and diligently searched but was unable to determine whether Nalwa 1996 was publicly available before the critical date for the '143 patent application,

14

August 28, 1997 lacks credibility. Polycom provides no evidence of what these assertedly repeated and diligent searches involved. In contrast, FullView specifically contends that a search on Google Scholar, Semantic Scholar or the PTO website shows that Nalwa 1996 was cited in a patent application filed prior to the critical date for the '143 Patent. Polycom provides no response nor does it dispute FullView's claim about the ease with which Polycom could have discovered that Nalwa 1996 was publicly available before the critical date. The Court cannot conclude that Polycom demonstrated diligence in its discovery and assertion of Nalwa 1996, and, thus, denies Polycom's motion for leave to amend its invalidity contentions to include Nalwa 1996. *See O2 Micro*, 467 F.3d at 1368.

Additionally, Polycom's lack of diligence to discover Nalwa 1996 suggests that Polycom should have known about the alleged inequitable conduct when it filed its answer in July 2020. Yet, Polycom did not attempt to amend its answer herein until October 19, 2021. This undue delay of over one-year weighs against Polycom's request for leave to amend its answer. *See Acri,* 781 F.2d at 1398 ("[A]mendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). Although this factor weighs against Polycom's request for leave to amend its answer, it is not dispositive; the Court must address whether it would be futile for Polycom to amend its answer. *See Foman*, 371 U.S. at 182; *Hoang*, 910 F.3d at 1103.

C. <u>Polycom Fails to Allege Facts or Provide Evidence Sufficient to State a Claim for Inequitable Conduct or to Demonstrate That FullView Violated Patent L.R. 3-2</u>

Polycom seeks leave to amend its answer to assert a counterclaim of inequitable conduct. To state a claim for inequitable conduct, Polycom must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1327 n.3 (Fed. Cir. 2009) (internal citation omitted). Polycom fails to allege facts that satisfy these two elements, and thus, has not shown that it would be able to state a claim for inequitable conduct. Thus, its proposed amendment of its answer would be futile, and Polycom has not

15

demonstrated violation of Patent L.R. 3-2 by FullView.

Central to Polycom's theory of inequitable conduct is its allegation that Nalwa 1996 discloses, anticipates or renders obvious the patented inventions of the '143 Patent. But as explained above, Polycom fails to demonstrate Nalwa 1996 discloses the '143 Patent. Indeed, Polycom declined to address whether Nalwa 1996 discloses anything about the '143 Patent not already disclosed by the '711 Patent or any other prior art that the '143 Patent application disclosed. Polycom, thus, has waived any such argument to the contrary.

Moreover, Polycom's allegation that FullView's interrogatory response reveals that Dr. Nalwa attempted to sell and publicly showed the invention patented in '143 Patent to thousands of people before the critical date in 1997 lacks merit. Motion at 8. Polycom selectively quotes from the interrogatory response, which leaves out the context that Dr. Nalwa described the iterative process by which he developed the technology included in the '143 Patent, beginning with the first device which he filed a patent for in 1995 – the '711 Patent. See Docket No. 164-2 at 5-6. In the same response, Dr. Nalwa stated under oath that, "Every art with a bearing on the patent application for the '143 patent application for the '143 Patent that came to the attention of the inventor or his patent attorneys was disclosed to the patent office" and that the "asserted claims were reduced to practice in 1999-2000." *Id.* Polycom failed to account for or address the context surrounding Dr. Nalwa's interrogatory response.

Thus, Polycom has not alleged facts sufficient to demonstrate the first prong of inequitable conduct before the PTO – that FullView "made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information." *Exergen Corp.*, 575 F.3d at 1327 n.3.

Polycom also fails to satisfy the second prong of inequitable conduct: Polycom has not alleged facts sufficient to show that any failure to disclose was made with "a specific intent to deceive the PTO." *Id.* Polycom alleges no facts establishing Dr. Nalwa's specific intent to deceive the PTO. Having disclosed the '711 Patent and dozens of other works of prior art in the '143 Patent application, why would Dr. Nalwa deliberately conceal Nalwa 1996, particularly since it has not been shown that Nalwa 1996 disclosed anything beyond that which was disclosed in the

prior application for the '711 patent? And if FullView and Dr. Nalwa were engaged in a decades-long fraud to conceal Nalwa 1996, why would they have made Nalwa 1996 publicly available on FullView's website since at least 2009, including during the pendency of IPR proceedings regarding the '143 Patent?

Therefore, Polycom has not alleged facts sufficient to satisfy either of the two elements required to claim for inequitable conduct; it has failed to state a plausible claim of inequitable conduct. *Exergen Corp.*, 575 F.3d at 1327 n.3. Thus, it would be futile for the Court to grant Polycom leave to amend its answer to include a counterclaim for inequitable conduct. *See Foman*, 371 U.S. at 182. Given Polycom's lack of diligence and undue delay in asserting this counterclaim, the Court denies Polycom's request for leave to amend its answer.

Furthermore, Polycom's argument that FullView violated Patent Local Rules 3-2(a)-(b) by failing to disclose Nalwa 1996 is similarly meritless. As already explained, Polycom has not demonstrated that Nalwa 1996 discloses the patented inventions in the '143 Patent, and thus, it is not a document that "evidence[s] disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit," Patent L.R. 3-2(a), nor does it "evidenc[e] the conception, reduction to practice, design, and development of each claimed invention," Patent L.R. 3-2(b). Therefore, FullView's failure to disclose Nalwa 1996 did not violate the Rules and Polycom's request to compel FullView to produce additional documents pursuant to the Rule is denied.

D.     Leave to Amend Invalidity Contentions to Include the UNC Device

Polycom also fails to demonstrate its diligence in locating the prior art of the UNC device, nor to justify why it is seeking leave to amend *now,* more than a year after it filed its invalidity contentions on August 31, 2020. Polycom does not explain why due diligence could not have led it to discover the Majumder 1999 paper and reference to the UNC device therein earlier. No explanation is given why Polycom was unable to locate this paper and its reference to the UNC device. Nor does Polycom explain why it could not have met with Mr. Keller, the potential expert from UNC, before serving its Invalidity Contentions.

All Polycom states is that it was "diligent in searching for relevant prior art before August

31, 2020 when Polycom served its invalidity contentions with respect to the '143 Patent by performing internet searches for prior art, engaging a prior art research firm, and working with a subject matter expert." Motion at 21. But this statement does not explain *why* Polycom did not previously locate Majumder 1999—which appears to be a publicly-available paper—or *why* Polycom did not previously become aware of the UNC device, which they allege was demonstrated to thousands of members of the public in 1997. *Id.* at 11. Polycom makes an unsubstantiated, conclusory assertion that "a device—even a device on public display is unlikely to be uncovered by a prior art search firm who would be targeting publications and patents." *Id.* at 21. But as Polycom stated itself, the UNC device was included and described in a *publication,* Majumder 1999. Polycom failed to establish that there was any inherent "difficulty of locating the prior art." *Golden Hour Data Sys., Inc*, 2008 WL 2622794, at *2. Polycom fails to satisfy its burden to establish diligence as required to be granted leave to amend its invalidity contentions. *O2 Micro*, 467 F.3d at 1368.

Thus, the Court denies Polycom's motion to amend its invalidity contentions to include the UNC device.

## V.     CONCLUSION

The Court **DENIES** Polycom's motion. Docket No. 164.

This order disposes of Docket No. 164.

**IT IS SO ORDERED**.

Dated: November 30, 2021

_____
EDWARD M. CHEN
United States District Judge