1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

| FULLVIEW, INC., | Case No. 18-cv-00510-EMC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| POLYCOM, INC., | |
| Defendant. | Docket Nos. 190, 195-196 |

12

13

14       Plaintiff FullView, Inc. ("FullView") filed suit against Defendant Polycom, Inc.

15   ("Polycom") for patent infringement of U.S. Patent No. 6,128,143 ("the '143 patent").  Now

16   pending before the Court are cross-motions for summary judgment.  FullView moves for summary

17   judgment that Polycom has infringed claims 10–12 of its '143 patent, Docket No. 190 ("FullView

18   MSJ"); Polycom moves for summary judgment of non-infringement of the same claims, Docket

19   No. 195 ("Polycom MSJ").  Additionally, Polycom moves to file the Keller Declaration Exhibits 1

20   and 2 under seal.  Docket No. 196.

21       For the following reasons, the Court **GRANTS** FullView's motion for summary judgment

22   and **DENIES** Polycom's motion for summary judgment.  Additionally, the Court **GRANTS**

23   Polycom's motion to file under seal.

24                    **I.       FACTUAL AND PROCEDURAL BACKGROUND**

25   A.    Factual Background

26         1.    The '143 Patent

27       FullView is a contractor for the U.S. Navy and provides up-to-360° panoramic cameras for

28   aircraft carriers.  Docket No. 75 ("Compl.") ¶ 7–8.  FullView owns a group of patents directed to

United States District Court
Northern District of California

1    technology that creates composite images, otherwise known as panoramic photographs.  *Id.* ¶ 10–

2    11.  One of these patents—the '143 patent—is entitled "Panoramic viewing system with support

3    stand" and lists Dr. Vishvjit Singh Nalwa as the inventor.  Docket No. 1-2, Exh. B.  The claims of

4    the '143 patent are directed to a "compact high resolution omnidirectional or panoramic viewer

5    [with] several cameras with a common virtual optical center . . . arranged to form a continuous 360

6    degree view of an area when taken as a whole."  *Id.*  Figure 2 further illustrates such "a four

7    camera omnidirectional or panoramic viewing system using a four-sided pyramid with reflective

8    surfaces":



FIG. 2

16    *Id.* at col. 3, ll. 1–3.

17           At issue are independent claim 10 and dependent claims 11 and 12.  Claim 10 is

18    representative and recites:

19               A panoramic viewing apparatus, comprising:

20                   *plurality of image processing devices*, each having an optical
                     center and a field of view;

21
                     *a pyramid shaped element* having a plurality of reflective side
22                   facets facing in different directions, each of at least two of the
                     plurality of reflective side facets redirecting a field of view of
23                   one of the plurality of image processing devices to create a
                     plurality of virtual optical centers; and
24
                     a support member intersecting an inner volume of the pyramid
25                   shaped element, the pyramid shaped element being secured to
                     the support member and the plurality of image processing
26                   devices being *secured to the support member*.

27    *Id.* at col. 16, ll. 20–34 (emphases added).  This Court has construed "pyramid shaped element" as

28    "an object that has the shape of a pyramid, except that its apex and base may be absent or

United States District Court
Northern District of California

incomplete." Docket No. 142 at 2:4–7. The Court has also construed "inner volume" as "inside

the space defined and bounded by the pyramid shaped element." Docket No. 137 at 12:17–19.

Claims 11 and 12 depend upon claim 10. Claim 11 requires that the "image processing devices"

are "secured to a portion of the support member extending out from the pyramid shaped element,"

and claim 12 further requires that the "support member" be "hollow." '143 Patent at 16:34–39.

Neither party requested that the Court construe any other claim term.

    2.   Alleged Infringement

    FullView alleges that Polycom has infringed the '143 patent[1] with its CX5000 Successor

Products, which include CX5000 HD, CX5100, CX5500, CX8000 360º, and RealPresence Centro.

Compl. ¶ 31, 61. All the CX5000 Successor Products "provide[] panoramic 360° video for

videoconferencing applications using the camera-mirror arrangement of Figure 2 of the '711

Patent, but with five cameras ('sensors') instead of four." *Id.* ¶ 35–36. The CX5000 product was

previously sold as the Microsoft Roundtable product, shown below in its assembled and

disassembled forms:



United States District Court
Northern District of California

---

[1] FullView also alleged that Polycom has infringed U.S. Patent No. 6,700,711 ("the '711 patent"). Docket No. 1-1. This Court found the '711 patent invalid. Polycom filed a partial motion to dismiss for lack of patentable subject matter as to the '711 patent claims, arguing that the claims were directed to an unpatentable abstract idea. Docket No. 80. The Court granted the motion. Docket No. 105. The '711 patent is not at issue here.



*Id.* ¶ 27, 35–36.

Effective April 1, 2011, FullView licensed the '143 patent to Polycom to manufacture and sell CX5000 products. *Id.* ¶ 14, 49. Over the next few years, Polycom ceased selling CX5000 products and began selling CX5000 Successor Products (such as CX5000 HD, CX5100, CX5500, CX8000 360º and RealPresence Centro). *Id.* ¶ 31, 50. Negotiations for a license for the CX5000 Successor Products were unsuccessful. *Id.* ¶ 17. On July 2, 2012, Polycom gave FullView notice to terminate the license agreement effective October 1, 2012, then disavowed this date for an earlier date after both dates had elapsed. *Id.* ¶ 16. FullView initiated arbitration and prevailed. *Id.*

B.    Procedural History

On January 31, 2019, Polycom filed a petition for IPR of the '143 patent, challenging claims 1–3 and 10–12. Docket No. 118-1, Exh. C; Compl. ¶ 24. After an exchange of expert declarations, the Patent Trial and Appeals Board ("Board") determined that the prior art references did not anticipate or render obvious the challenged claims. Docket No. 180-18 at 12–22. The Board denied institution of Polycom's petition. *Id.*

FullView filed its original Complaint herein on January 23, 2018. Docket No. 1. FullView filed its Second Amended Complaint on July 2, 2020, alleging infringement of its '143 patent under 35 U.S.C. § 271. Docket No. 75 ("Compl.") ¶ 44–47.

Polycom filed a motion for summary judgment of invalidity. Docket No. 179. FullView filed a cross-motion for summary judgment of validity. Docket No. 181. The Court denied Polycom's motion, reasoning that Polycom failed to carry its burden to demonstrate by clear and convincing evidence that the two prior art references render claim 10 obvious, and granted FullView's motion. Docket No. 187, at 20, 23.

4

1      Following a claim construction hearing, FullView filed a motion for summary judgment of

2   infringement.  Docket No. 190 ("FullView MSJ").  Polycom filed a cross-motion for summary

3   judgment of non-infringement.  Docket No. 195 ("Polycom MSJ").

### II.    LEGAL STANDARD

A.    Motion for Summary Judgment (Rule 56)

6      Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

7   [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

8   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine

9   only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See*

10  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "The mere existence of a scintilla

11  of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably

12  find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence must be

13  viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be

14  drawn in the nonmovant's favor.  *See id.* at 255.

15     Where a defendant moves for summary judgment based on a claim for which the plaintiff

16  bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

17  showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

18  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

19     These standards for summary judgment apply with full force to summary judgment

20  motions involving patent claims.  *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1571

21  (Fed. Cir. 1984).  "Summary judgment on the issue of infringement is proper when no reasonable

22  jury could find that every limitation recited in a properly construed claim either is or is not found

23  in the accused device either literally or under the doctrine of equivalents."  *PC Connector*

24  *Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359 (Fed. Cir. 2005) (citing *Bai v. L & L Wings,*

25  *Inc.*, 160 F.3d 1350, 1353–54 (Fed. Cir. 1998)).

B.    Patent Infringement

27     To prove direct infringement, FullView must show by a "preponderance of the evidence

28  that 'one or more claims of the patent read on the accused device literally or under the doctrine of

*United States District Court*
*Northern District of California*

5

1  equivalents.'"  *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1349 (Fed. Cir. 2010) (citing

2  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)).

3  Literal infringement occurs when the accused product embodies every limitation of the asserted

4  claim.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369 (Fed. Cir. 2009).

5  Infringement under the doctrine of equivalents occurs when the accused device "performs

6  substantially the same function in substantially the same way to obtain the same result."  *Graver*

7  *Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (citing *Sanitary Refrigerator*

8  *Co. v. Winters*, 280 U.S. 30, 42 (1929)); *see also Warner-Jenkinson Co. v. Hilton Davis Chemical*,

9  520 U.S. 17, 21, 39–40 (1997).

10  **III.      DISCUSSION**

11     This Court grants summary judgment of infringement.  Polycom's CX5000 literally

12  infringes the '143 patent and, in the alternative, infringes under the doctrine of equivalents.

13  A.      <u>Literal Infringement</u>

14     To determine whether a product literally infringes, a court must first determine the

15  meaning and scope of the asserted claims.  *Markman v. Westview, Instruments Inc.*, 52 F.3d 967,

16  979 (Fed. Cir. 1995) (en banc).  The trier of fact must then determine whether the claims as thus

17  construed read on the accused product.  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570,

18  1575 (Fed. Cir. 1995).  Literal infringement occurs only when the accused product embodies every

19  limitation of the asserted claim.  *Revolution Eyewear*, 563 F.3d at 1369.  Here, the CX5000 must

20  embody every limitation of claim 10: (1) a "*plurality*" of (2) "*image processing devices*, each

21  having an optical center and a field of view," (3) "a *pyramid shaped element* having a plurality of

22  reflective side facets facing in different directions, each of at least two of the plurality of reflective

23  side facets redirecting a field of view of one of the plurality of image processing devices to create

24  a plurality of virtual optical centers," and (4) "a support member intersecting an inner volume of

25  the pyramid shaped element, the pyramid shaped element being secured to the support member

26  and the plurality of image processing devices being *secured to the support member*."  '143 Patent

27  at col. 16, ll. 20–34 (emphases and numbering added to reflect disputed terms).

28     In its motion for summary judgment, FullView asserts that there is no genuine dispute of

United States District Court<br>Northern District of California

6

1    material fact that the Polycom CX5000 embodies every limitation of claim 10 of FullView's '143

2    patent.  FullView MSJ at 12.  FullView first argues that the term "image processing device" must

3    be in essence a "camera" and that each set of lens and image sensor device, together with

4    associated circuitry which converts the optical image into a digital signal, constitutes an "image

5    processing device," *i.e.*, a camera.  *Id.* at 13.  FullView also argues that the CX5000 has a

6    "plurality" of five cameras and that they are "secured to" the support member because it is

7    attached via a circuit board.  *Id.* at 14.

8           In its cross-motion for summary judgment, Polycom asserts that FullView's interpretation

9    of the "secured to the support member" limitation effectively eliminates the "support member"

10   term.  Polycom MSJ at 1.  Further, Polycom asserts that the CX5000 does not embody "a plurality

11   of image processing devices" because the CX5000's five imagers are part of one inseparable

12   camera.  *Id.* at 2, 5.  Because every element of the asserted claims must be present in the accused

13   device, including the support member, Polycom concludes that the CX5000 does not literally

14   infringe claim 10.  *Id.* at 1.

15          We parse and address each claim limitation in turn.

16          1.      "image processing devices"

17          The CX5000 embodies claim 10's "image processing devices" limitation.  To determine

18   infringement, the Court must first address the matter of claim construction.  "Consistent with

19   claim construction principles, we look first to the language of the claims, followed by the language

20   of the specification and prosecution history."  *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370,

21   1374 (Fed. Cir. 2019).  The words of the claims "are generally given their ordinary and customary

22   meaning."  *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315–16 (Fed.

23   Cir. 2006); *see also Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed.

24   Cir. 2002) (holding that "the most important indicator of the meaning of [a term] is its usage and

25   context within the claim itself").  Here, claim 10 expressly requires that every "image processing

26   device" have a single "optical center" and a single "field of view."  '143 Patent at col. 16, ll. 21–

27   22. Because a "camera" comprises of a single image sensor and lens that forms an image on the

28   sensor—thereby one optical center and one field of view—each set of lens, image sensor, and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   circuitry can be considered a single "camera."  Accordingly, the language of the claims supports

2   FullView's construction of "image processing devices" as what in common parlance is a

3   "camera."

4   Moreover, this conclusion is reinforced by the structure in the figures in the '143 patent

5   and the accompanying descriptions.  "[B]ecause a claim construction that would exclude the

6   preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary

7   support,' a court mindful of this canon of construction would need to examine the written

8   description and the drawings to determine whether the preferred embodiment falls within the

9   scope of a construed claim."  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir.

10  2001) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).  To be

11  sure, "[a] patent that discloses only one embodiment is not necessarily limited to that embodiment.

12  It is improper to read limitations from a preferred embodiment described in the specification—

13  even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record

14  that the patentee intended the claims to be so limited."  *GE Lighting Sols., LLC v. AgiLight, Inc.*,

15  750 F.3d 1304, 1309 (Fed. Cir. 2014) (internal citations and quotation marks omitted).

16  Nonetheless, a PHOSITA would be guided by Figure 17 of the '143 patent, which discloses:



25  Exh. 116-1 at ¶ 30 (red comments added by Dr. Nalwa).  The specification describes "cameras

26  810" as connected to cables running through "hollow tube 804."  '143 Patent at col. 12, ll. 1–2.

27  Figure 17 makes clear that the claimed "image processing devices" are the functional equivalent to

28  "cameras."

1        Next, turning to the prior art referenced in its Invalidity Contentions, Polycom repeatedly

2   cited prior art language that maps the term "image processing device" to a camera.  The claim

3   language of U.S. Patent No. 3,118,340 ("Iwerks") describes "cameras 11 (or image processing

4   devices)."  Docket No. 180-4, Exh. A, at 5.  The article "Generation of High-resolution Stereo

5   Panoramic Images by Omnidirectional Imaging Sensor Using Hexagonal Pyramidal Mirrors," by

6   Yamazawa et al. ("Yamazawa 1998") explains that "the sensor of Yamazawa 1998 captures

7   reflected images using two sets of six cameras, which are examples of image processing devices

8   . . . Each camera has an optical center and field of view."  *Id.* at 29.  The related article "High-

9   resolution Omnidirectional Stereo Imaging Using Pyramidal Mirrors," by Yamazawa et al.

10  ("Yamazawa 1997") likewise explains that "the sensor of Yamazawa 1997 captures reflected

11  images using two sets of six cameras, which are examples of image processing devices."  *Id.* at 37.

12  These prior art references cannot be considered as intrinsic evidence because they are cited in the

13  challenger's invalidity contentions, not the patentee's own representations or patent language.

14  *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005) ("The prosecution

15  history constitutes a public record of the patentee's representations concerning the scope and

16  meaning of the claims . . .).  But the Court may consider these prior art references as independent

17  extrinsic evidence of how to construe "image processing device" since that evidence is

18  informative of how a PHOSITA would interpret the term.  *See* 1 ANNOTATED PATENT DIGEST §

19  7:1 ("Extrinsic evidence encompasses 'all evidence external to the patent and prosecution history,

20  including expert and inventor testimony, dictionaries, and learned treatises.'") (citing *Markman*,

21  517 U.S. 370).  These references clearly consider an "image processing device" synonymous with

22  a "camera."

23       Thus, there is no dispute of material fact that a PHOSITA would find that each of

24  CX5000's cameras itself embodies an "image processing device."

25       2.    "plurality"

26       The CX5000's five image sensors and five corresponding lens—together, the equivalent of

27  five cameras—embody claim 10's "plurality" of image processing devices.  Polycom argues that

28  the CX5000's five imagers "are part of a single inseparable camera board/module, which cannot

United States District Court
Northern District of California

1    be separately adjusted or reconfigured once they are attached to the circuit board, in contrast to the

2    claimed image processing devices." Polycom MSJ at 16–17. Polycom also argues that "the

3    imagers do not perform any image processing [because t]he unprocessed, raw image data from the

4    imagers are sent to a physically separate image processing board/module outside of where the five

5    imagers reside." *Id.* at 17. Polycom concedes that this is not their main argument and, indeed, this

6    Court does not find the logic persuasive.

7          First, there are five sets of image processing devices—each comprised of a lens, an image

8    sensor, and associated circuitry—*i.e.*, the equivalent of five cameras. There is no reason why a

9    plurality of such devices, fixed and unable to be reconfigured easily, should be conflated into a

10   single device simply because they are located on one circuit board. Moreover, this construction

11   conflicts with the express language of the claims. Claim 10 expressly requires that every "image

12   processing device" have a single "optical center" and a single "field of view." '143 Patent at col.

13   16, ll. 21–22. Each of the five "image processing devices," (*i.e.* each camera), has a single optical

14   center and field of view. To consider the collection of all five devices as being only one "image

15   processing device" would mean that the singular image processing device would have multiple

16   optical centers and fields of view—a result which is not only nonsensical but would be in conflict

17   with the express terms of claim 10 of the patent. Furthermore, that the panoramic integration of

18   the image data from the five cameras—the additional processing of the data from the five fields of

19   view—takes place elsewhere in a separate singular data processing module does not negate the

20   fact that there are five image processing devices at the front end of the process. Thus, for instance,

21   the fact that images from a camera are subject to editing does not make that editing equipment part

22   of the camera. Accordingly, there is no dispute that a PHOSITA would find that the CX5000

23   embodies a plurality of imaging processing devices.

24          3.    "pyramid shaped element"

25          The CX5000 embodies claim 10's "pyramid shaped element" limitation. The Court

26   previously construed a "pyramid shaped element" to be "an object that has the shape of a pyramid,

27

28

United States District Court
Northern District of California

1  except that its apex and base may be absent or incomplete."[2]  Docket No. 142 at 2:4–7.  A

2  PHOSITA would clearly find that a CX5000's pyramidal mirror has a polygonal base with

3  triangular sides, with "a plurality of reflective side facets facing in different directions" and

4  cameras pointed in those directions.  Polycom does not dispute that the CX5000 embodies this

5  limitation.

6      4.    "secured to the support member"

7      The CX5000 embodies claim 10's "secured to the support member" limitation.  In a

8  CX5000, the five imaging processing devices are not mounted directly on the support member.

9  Rather, they are mounted on an intervening structure: the cameras' lens is epoxied to an image

10  sensor, which in turn is soldered onto the circuit board, which is screwed to a steel chassis with a

11  circular hole through which passes the support member.  Docket No. 190-1, Exh. 1 at ¶ 68–70;

12  FullView MSJ at 14; Polycom MSJ at 2.  The support member is attached to the chassis with a

13  washer and nut.  Docket No. 190-1, Exh. 1 at ¶ 68–70.  The configuration appears as follows:



Chassis Underneath Circuit Board Bolts to Post

22  Docket No. 190-1, Exh. 1 at ¶ 68 (red and yellow comments added by Dr. Nalwa).  In this

23  arrangement, the image processing devices are "secured to" the support member.  It does so even

24  if they are not directly attached to the support member but secured through a series of fixed

---

[2] According to Dr. Nalwa's declaration, "[a] pyramid is a polyhedron with a polygonal base and triangular side facets, each triangular side facet extending from one complete edge of the polygonal base to a common vertex."  Docket No. 116-1 ¶ 20.  In a "pyramid shaped element," "the apex of the pyramid may be truncated" and "the base of the pyramid may be incomplete and may have for instance a hole in it."  *Id.* at ¶ 21.

1    connections.

2    The plain meaning of the term "secured" allows for two objects to be fastened or attached

3    in some way, such as with bolts or welding, without direct contact between the two objects.

4    Indeed, Polycom agrees that "[d]irect physical contact is possible but not required by the '143

5    patent for image processing devices to be secured to the support member."  Polycom MSJ at 12;

6    *see also id.* at 13 (asserting that requiring direct contact "is not and never has been Polycom's

7    proposed construction"); *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012)

8    (agreeing with the parties "that two objects may be 'secured to' one another without being in

9    direct contact").  If a rigid bracket can secure to separate objects, why can't two brackets

10   connected to each other do the same?  Or a bracket, connected to a chassis or a steel plate?  What

11   if a camera is screwed to that steel plate?  What if that camera is fixed and soldered to a circuit

12   board which, like a steel plate, is screwed to the metal chassis which is directly attached to the

13   support member?  Polycom offers no principled reason for distinguishing among these

14   configurations.  In each, all the elements are secured to each other.

15   Additionally, dictionary definitions of the term "secure" support FullView's construction.

16   Although not alone determinative, the Court "may rely on dictionary definitions, 'so long as the

17   dictionary definition does not contradict any definition found in or ascertained by a reading of the

18   patent documents.'"  *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d

19   1359, 1363 (Fed. Cir. 2016) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321–22 (Fed. Cir.

20   2005)); *see also Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir.

21   2003) ("While dictionaries and treatises are useful resources in determining the ordinary and

22   customary meaning or meanings of disputed claim terms, the correct meaning of a word or phrase

23   is informed only by considering the surrounding text.").  The Oxford Dictionary defines the term

24   "to secure" as "to attach or fasten something so that it does not move."  The Cambridge Dictionary

25   defines it as "to fasten one object firmly to another."  The key to attachment or fastening is that it

26   does not allow movement.  Neither definition imposes any requirement that the two objects must

27   be in direct contact with one another.  Nothing prevents fastening via intermediate elements like a

28   bracket.

United States District Court
Northern District of California

1    In sum, Polycom has raised no genuine disputes of material fact that would preclude

2    granting a motion for summary judgment of literal infringement.  A PHOSITA would conclude

3    that the CX5000's cameras are "image processing devices," consistent with the plain language of

4    the claim and Polycom's own implicit construction.  A PHOSITA would conclude that the

5    CX5000 has a plurality of five image processing devices or cameras, even if they are all attached

6    to a single circuit board.  A PHOSITA would conclude that these cameras are secured to the

7    support member, even if not directly in contact.  Thus, the CX5000 embodies every limitation of

8    claim 10.

9    B.    Infringement Under the Doctrine of Equivalents

10    In the alternative, summary judgment of infringement is also supported by the doctrine of

11    equivalents.  An accused product that does not literally infringe a claim may infringe under the

12    doctrine of equivalents if "it performs substantially the same function in substantially the same

13    way to obtain the same result."  *Graver Tank*, 339 U.S. at 608.  "What constitutes equivalency

14    must be determined against the context of the patent, the prior art, and the particular circumstances

15    of the case. . . . It does not require complete identity for every purpose and in every respect."  *Id.*

16    at 609.  This is a limitation-by-limitation inquiry:  "Each element contained in a patent claim is

17    deemed material to defining the scope of the patented invention, and thus the doctrine of

18    equivalents must be applied to individual elements of the claim, not to the invention as a whole."

19    *Warner-Jenkinson*, 520 U.S. at 29.

20    The primary disputed issue—the "secured to" limitation—is embodied by the CX5000

21    under the doctrine of equivalents.  As FullView asserts, "[t]hat the cameras in CX5000 are

22    mounted on the circuit board does not affect their 'function, way, and result' relative to that of

23    'image processing devices' in the patent."  FullView MSJ at 21.  This argument is persuasive.

24    Both the secured objects in the CX5000 and in claim 10 perform substantially the same *function*:

25    to provide a consistent geometry between the cameras, the pyramid shaped element, and the

26    support member.  The secured objects in the CX5000 and claim 10 both obtain the same *result*: a

27    rigid connection between the camera, the pyramid shaped element, and the support member that

28    does not shift.  Both perform the function in "substantially the same *way*."  Two products may

United States District Court
Northern District of California

United States District Court
Northern District of California

1  function in substantially the same way when the differences are minimal, unlikely, or negligible.

2  *See Omark Indus., Inc. v. Textron, Inc.*, 688 F.2d 1242, 1250 (9th Cir. 1982) (holding that the

3  accused saw chain performs in the "same way" as the patented saw chain in decreasing kickback,

4  despite the differing "location of the pivot point on the cutting link" in the designs); *Micro Motion,*

5  *Inc. v. Exac Corp.*, 741 F. Supp. 1426, 1438 (N.D. Cal. 1990) (holding that two conduit devices

6  perform in the same way to measure mass flow rate despite the accused device being "nonplanar

7  . . . subject to hydrostatic, inertial, and centrifugal forces" because those extraneous forces are

8  "unlikely" and "can be removed from the mass flow measurements by . . . 'zeroing' [or] minimal

9  'fine tuning'").  The use of an intermediary structure between the camera and the support member

10  does not substantially change the way the cameras are secured to the support member.  Polycom

11  concedes this.  A PHOSITA would know that the securing method in the CX5000 could be

12  interchanged with the securing method in claim 10.  *See Graver Tank*, 339 U.S. at 609

13  ("Consideration must be given to the purpose for which an ingredient is used in a patent, the

14  qualities it has when combined with the other ingredients, and the function which it is intended to

15  perform.  An important factor is whether persons reasonably skilled in the art would have known

16  of the interchangeability of an ingredient not contained in the patent with one that was.").

17         This Court thus grants summary judgment of infringement.

18  C.     Motion to File Under Seal

19         Additionally, Polycom moves to file under seal the Keller Declaration Exhibits 1 and 2.

20  Docket No. 196.  Civil Local Rule 79-5 permits this Court to seal documents that contain material

21  that is "privileged, protectable as a trade secret or otherwise entitled to protection under the law."

22  Civil L.R. 79-5(b).  Litigants may file under seal documents reflecting confidential, trade secret,

23  and propriety information related to a party's products and businesses practices.  *See Finisar*

24  *Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. 2015).  Exhibits 1 and 2 attached to the

25  Declaration of Kurtis Keller in Support of Polycom's Motion for Summary Judgment of

26  Noninfringement contain proprietary, non-public circuit diagrams of certain components of the

27  accused products.  They were designated as "Attorneys' Eyes Only – Confidential."  Furthermore,

28  Polycom followed the filing requirements of Civil Local Rule 79-5(d)(1)(A)–(D).  Courts

14

1 routinely grant motions to seal such information, and the Court likewise does so here.

**IV.**  **CONCLUSION**

  For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment and, accordingly, **DENIES** Defendant's motion for summary judgment.  Additionally, the Court **GRANTS** Defendant's motion to file under seal.

  This order disposes of Docket No. 190, 195, and 196.

  The Court sets a further status conference to discuss future scheduling for November 15, 2022, at 2:30 p.m. via Zoom.

  **IT IS SO ORDERED**.

Dated: October 19, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

15